(February 24, 1916.)

HARRY A. ROGERS, as Administrator of the Estate of JOSEPH PAPINEAU, Deceased, Respondent, v. OREGON–WASHINGTON RAILROAD & NAVIGATION COMPANY, a Corporation, Appellant.

[156 Pac. 98.]

PLEADING—STATUTE OF LIMITATIONS—FLOODING OF LANDS—TIME WHEN CAUSE OF ACTION ACCRUES.

1.   Under the rules of practice in this state, a statute of limitations may be pleaded either in the demurrer or answer, where it appears on the face of the complaint that the cause of action is barred by such statute, and by answer where it does not appear on the face of the complaint that the cause of action is so barred. The plea of the statute of limitations cannot be invoked by general demurrer. (Chemung Min. Co. v. Hanley, 9 Ida. 786, 77 Pac. 226, cited and approved.)

[As to nature and purpose of statute of limitations, see note in 101 Am. St. 145.]

2.   Where a defendant does not plead the statute of limitations as a bar to a cause of action by either demurrer or answer, the defense that the cause of action is so barred must be deemed to have been waived, under the provisions of sec. 4178, Rev. Codes.

3.   Where a railroad constructed a bridge with pile approaches across a river, such pile approaches being filled in with a permanent earth embankment and protected by a shear dam, such structures being entirely on the right of way of the railroad company, and thereafter as a result of such construction it appears during an unusual freshet that the free flow of the river was impeded and the water backed up on the adjoining land of a riparian owner, such owner

may recover the actual damage thereby suffered; and his cause of action does not accrue until the injury is sustained, since he is not in a position to prove damages until they have actually occurred.

4.  The statute of limitations begins to run in actions for flooding land only when actual damage is sustained from such flooding, and not at the time when defendant's dam or other obstruction to the flow of the stream is first constructed.

5.  *Held,* that the trial court committed no error in its rulings upon the admission or exclusion of testimony.

APPEAL from the District Court of the First Judicial District, for Shoshone County.   Hon. Wm. W. Woods, Judge.

Action for damages.   Judgment for plaintiff.   *Affirmed.*

A. C. Spencer, L. R. Hamblen and Featherstone & Fox, for Appellant.

."Whenever a nuisance is of such a character that its continuance is necessarily an injury and when it is of a permanent character, that will continue without change from any cause but human labor, then the damage is an original damage, and may be at once fully compensated." (*Troy v. Cheshire R. Co.,* 23 N. H. 83, 55 Am. Dec. 177; *Powers v. Council Bluffs,* 45 Iowa, 652, 24 Am. Rep. 792; *Stodghill v. C. B. & Q. R. Co.,* 53 Iowa, 341, 5 N. W. 495; *Chicago & E. I. R. Co. v. Loeb,* 118 Ill. 203, 59 Am. Rep. 341, 8 N. E. 460; *Fowle v. New Haven & N. Co.,* 107 Mass. 352, 112 Mass. 334, 17 Am. Rep. 106; *Turner v. Overton,* 86 Ark. 406, 111 S. W. 270; *Kansas Pac. Ry. Co. v. Mihlman,* 17 Kan. 224; *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 Pac. 899, 50 L. R. A., N. S., 388; *Abilene Light & Water Co. v. Clack* (Tex. Civ.), 124 S. W. 201; *Chicago, B. & Q. R. Co. v. O'Connor,* 42 Neb. 90, 60 N. W. 326; *Gulf, C. & S. F. R. Co. v. Mosely,* 161 Fed. 72, 88 C. C. A., 236, 20 L. R. A., N. S., 885, and note; Gould on Waters, sec. 416; 2 Farnham on Waters, sec. 586; 4 Sutherland on Damages, sec. 1042.)

Where damage is caused by a permanent structure, such as a railroad embankment, the damage, being original, belongs to him who is the owner of the land at the time the cause of action arises. (*Kakeldy v. Columbia & P. S. R. Co.,* 37

Wash. 675, 676, 80 Pac. 205; *King v. New York*, 102 N. Y. 171, 6 N. E. 395; *Dunlap v. Toledo, A. A. etc., Ry. Co.*, 50 Mich. 470, 15 N. W. 555; *Kindred v. Union Pac. R. Co.*, 225 U. S. 582, 32 Sup. Ct. 780, 56 L. ed. 1216; *Board of Directors v. Barton*, 92 Ark. 406, 135 Am. St. 191, 123 S. W. 382, 25 L. R. A., N. S., 645; *Chicago & Alton R. Co. v. Maher*, 91 Ill. 312; *Chicago & E. I. R. Co. v. Loeb*, 118 Ill. 203, 59 Am. Rep. 341, 8 N. E. 460; *Boise Valley Construction Co. v. Kroeger*, 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968.)

James A. Wayne, for Respondent.

If it clearly appears from the face of the complaint that the cause of action did not accrue within the statutory time, the plea of the statute should be taken by demurrer. (*Chemung Min. Co. v. Hanley*, 9 Ida. 786, 77 Pac. 226.)

But if it does not clearly appear from the face of the complaint that the cause of action is barred by the statute of limitations, then the plea of the statute should be taken by answer. (*Chemung Mining Co. v. Hanley, supra.*)

And if the statute is not pleaded, either by demurrer or answer, then the objection that the cause of action is barred by the statute of limitations is deemed to have been waived. (Rev. Codes, sec. 4178. *Moulton v. Williams*, 6 Ida. 424, 426, 55 Pac. 1019; *Grattan v. Wiggins*, 23 Cal. 16; *People v. Broadway Wharf Co.*, 31 Cal. 33; *Kelley v. Kriess*, 68 Cal. 210, 9 Pac. 129; *Morton v. Bartning*, 68 Cal. 306, 9 Pac. 146; *Manning v. Dallas*, 73 Cal. 420, 15 Pac. 34; *Frantz v. Idaho Artesian Well & Drilling Co.*, 5 Ida. 71, 46 Pac. 1026.)

In each of the following cases the question of whether or not the statute of limitations began to run from the construction of such permanent obstruction or embankment, or whether such statute began to run when actual damages were suffered by the land owner, was directly passed upon by the court, and it was held that the statute did not begin to run until damages were actually suffered: *Union Trust Co. v. Cuppy*, 26 Kan. 754, 755; *Eells v. Chesapeake & O. Ry. Co.*, 49 W. Va. 65, 87 Am. St. 787, 38 S. E. 479; *Lawton v. Seaboard Air Line Ry.*, 75 S. C. 82, 55 S. E. 128; *Pickett v.*

*Atlantic Coast Line R. Co.,* 153 N. C. 148, 69 S. E. 8; *Greeley Irr. Co. v. Von. Trotha,* 48 Colo. 12, 108 Pac. 985; *Brisky, v. Leavenworth Logging, Boom & Water Co.,* 68 Wash. 386, 123 Pac. 519; *Atchison, T. & S. F. R. Co. v. Eldridge,* 41 Okl. 463, 139 Pac. 254; *Sullens v. Chicago etc. Ry. Co.,* 74 Iowa, 659, 7 Am. St. 501, 38 N. W. 545; *Omaha & R. V. R. Co. v. Brown,* 29 Neb. 492, 46 N. W. 39; *Reed v. Chicago, B. & Q. R. Co.,* 86 Neb. 54, 124 N. W. 917; *New York C. & St. L. R. Co. v. Hamlet Hay Co.,* 149 Ind. 344, 47 N. E. 1060, 49 N. E. 269.

In purchasing these lands Papineau had no notice that such lands were in any danger of being flooded or otherwise injured by reason of the manner in which defendant was using its right of way. In coming into that neighborhood Papineau had a right to rely upon the principle of law that adjoining property owners would so use their own land as not to work an injury to the lands he was purchasing. And the fact that the fill was already constructed does not bar a recovery by the subsequent purchaser of adjoining lands. (Webb's Pollock on Torts, 497; *Van Fossen v. Clark,* 113 Iowa, 86, 84 N. W. 989, 52 L. R. A. 279; *Longley v. McGeoch,* 115 Md. 182, 80 Atl. 843; *Susquehanna Fertilizer Co. v. Malone,* 73 Md. 268, 25 Am. St. 595, 20 Atl. 900, 9 L. R. A. 737; *Ingersoll v. Rousseau,* 35 Wash. 92, 76 Pac. 513, 1 Ann. Cas. 35; *Richards v. Ohio River R. Co.,* 56 W. Va. 592, 49 S. E. 385.)

BUDGE, J.—Respondent, as administrator of the estate of Joseph Papineau, deceased, began this action in the district court to recover damages to a tract of land near Cataldo, alleged to have been suffered during the high water of June, 1913.

The complaint alleges that at the time appellant's predecessor constructed its railway, it built a long bridge across the Coeur d'Alene river about opposite the lands of respondent; that at that time there existed in the Coeur d'Alene river, at that place, two channels, the southerly one being what is known as the main channel and the northerly one being partially dry during low water but taking care of the

overflow during high water. The north channel passed through appellant's bridge at the east end and paralleled the railroad track on the north for some distance, while the south channel paralleled the track on the south to a point at the extreme west end of appellant's bridge, where it passed under the same joining the other channel north of the track.

This bridge, as originally constructed, appears in the record to have been about 1,700 feet in length. For approximately 1,500 feet at the easterly end it was constructed upon piles, the open space beneath the railway tracks and the stream being between twelve and fourteen feet in height. The remainder of the bridge was a span over the south or what has been called the main channel of the river.

Some time after the construction of this bridge the railroad company began filling in the easterly end of it, first filling between 400 and 500 feet in 1902. In 1908 an additional 400 or 500 feet was filled.

The complaint further alleges that the result of filling this eastern portion of the bridge was to close the north channel and prevent the waters of the river at times of sudden and great rising thereof, from flowing into and through the north or overflow channel, and that while there still remained a sufficiently large channel to accommodate the waters of said river in times of low water, yet by the cutting off of said north channel the remaining portion of the channel of said river was not large enough to accommodate the waters of the river in high water.

It is further alleged that the waters, at the time of the construction of appellant's bridge, flowed in a direction somewhat toward said bridge, and that after appellant began filling in said bridge, it experienced some difficulty in keeping in its fill on account of the constant washing away thereof by the current bearing toward and upon said fill. To remedy this, a shear dam was erected, the purpose of which was to protect the railroad fill and throw the current of the river, which would otherwise strike said fill and tend to wash away the same, away from said fill and toward the opposite bank of the river.

It is not claimed that any damage whatsoever was done to the lands mentioned in the complaint, at any time prior to June, 1913, but it is alleged that in that year the waters of the Coeur d'Alene river experienced a sudden rise and to an unusual height, and that as the same reached the lands of respondent, they were thrown upon said lands with great force, due to the fact that such water could no longer flow freely in the natural channel which had existed prior to the construction of the railway bridge, nor under said railway bridge, for the reason that said bridge had been filled in and the waters shut off from the northerly channel of such river.

On the trial, one of the principal controversies as to the facts was waged around the question of whether the construction of the shear dam and the filling in of the pile approach of the bridge had in fact diverted the current of the Coeur d'Alene river and caused the damage complained of.

Appellant demurred to the complaint upon the grounds, (1) "That it appears from the face of said complaint that the plaintiff has not legal capacity to sue"; (2) "That it appears from the face of the complaint that the same does not state facts sufficient to constitute a cause of action"; and (3) "That the complaint is ambiguous, uncertain and unintelligible in the following respects," setting out under this third ground numerous alleged instances in which the complaint was subject to this third ground of demurrer.

The demurrer was overruled by the court, and appellant thereafter filed its answer.

This action was tried before the court and jury. At the close of all the testimony appellant moved the court to discharge the jury and render judgment in its favor, on the ground that it appeared from the undisputed facts in the case that the cause of action was barred by the statute of limitations, and that in any event such cause of action, if any existed, obtained only in favor of the owner of the land at the time the river was diverted by the structures in question. This motion was denied, and a verdict was rendered by the jury in favor of respondent. Judgment was there-

upon entered in respondent's favor, from which judgment this appeal is taken.

Appellant assigns and relies upon the following errors:

"1. The court erred in overruling the appellant's demurrer to the complaint.

"2. The court erred in sustaining respondent's objection to the question propounded to the witness Alec Anderson, asking whether in his opinion the presence of a certain line of piles in the south channel of the Coeur d'Alene river would cause the current of the river to be deflected against the banks of the Papineau lands.

"3. The court erred in admitting, over the objection of the appellant, testimony tending to show damage to the Papineau lands by reason of the banks having been made steep and abrupt, whereas before they were sloping, enabling stock to go down to the river for water.

"4. The court erred in denying appellant's motion, made at the close of all the testimony and evidence in the case, asking the court to discharge the jury and render judgment in favor of the defendant."

Specifications of error numbered 1 and 4, involving the court's ruling upon the demurrer, and denying appellant's motion made at the conclusion of all of the evidence in the case, are discussed by counsel for appellant in their brief under one head, for the reason, as they state, that both of said specifications of error comprehend practically one question. They claim that by reason of the construction of the shear dam and the filling in of the pile approach to the bridge making a permanent railroad embankment, completed twenty-five and twelve years ago, respectively, the question naturally arises as to whether the cause of action on which the complaint in this case is grounded did not accrue many years before Joseph Papineau became the owner of the land in controversy, and whether or not, in any event, such cause of action is not now barred by the statute of limitations. We think, however, it conclusively appears from the record that appellant first began filling in the approach to the bridge in 1902, and made another fill in 1908. There

is testimony to the effect that there was some filling done later than 1908. The damage to the land of respondent in this case accrued in 1913, five or six years subsequent to the last filling of the bridge. Approximately one year after the damage occurred this suit was instituted.

Under the rules of practice in this state, a statute of limitations may be pleaded either by special demurrer or by answer, where it appears on the face of the complaint that the cause of action is barred by such statute, and by answer where it does not appear on the face of the complaint that the cause of action is so barred. The plea of the statute of limitations cannot be invoked by a general demurrer. (*Chemung Min. Co. v. Hanley,* 9 Ida. 786, 77 Pac. 226.)

In the case of *Moulton v. Williams,* 6 Ida. 424, 55 Pac. 1019, this court said: "The plea of the statute of limitations is a personal one." And in the case of *Sterrett v. Sweeney,* 15 Ida. 416, 128 Am. St: 68, 98 Pac. 418, 20 L. R. A., N. S., 963, this court held that "The statute of limitations does not mean that the debt has been paid. It is a personal privilege which the law gives to the debtor, whereby he may say that the debt is stale, and for that reason should not be enforced." In the case of *Kelly v. Leachman,* 3 Ida. 629, 33 Pac. 44, it was held by this court that "The statute of limitations acts upon the remedy, and not upon the debt, and the running of the statute does not extinguish the debt. . . . ."

Sec. 4213, Rev. Codes, provides: "In pleading the statute of limitations it is not necessary to state the facts showing the defense, but it may be stated generally that the cause of action is barred by the provisions of section —— (giving the number of the section and subdivision thereof, if it is so divided, relied upon) of the Code of Civil Procedure; . . . ."

This statutory requirement would seem to be subject to no exceptions. (*Allen v. Allen,* 95 Cal. 184, 30 Pac. 213, 16 L. R. A. 646.)

In neither the demurrer nor the answer did appellant plead the bar of the statute of limitations as herein indicated. That being true, under numerous decisions of this court, as

well as of the courts of other states, the objection that the cause of action is barred by the statute must be deemed to have been waived by appellant, under the provisions of sec. 4178, Rev. Codes. (*Moulton v. Williams*, 6 Ida. 424, 55 Pac. 1019; *Grattan v. Wiggins*, 23 Cal. 16; *People v. Broadway Wharf Co.*, 31 Cal. 33, 34; *Kelley v. Kriess*, 68 Cal. 210, 9 Pac. 129; *Morton v. Bartning*, 68 Cal. 306, 9 Pac. 146; *Manning v. Dallas*, 73 Cal. 420, 15 Pac. 34; *McLeod v. Rogers*, 28 Ida. 412, 154 Pac. 970.)

It is insisted by counsel for appellant that if the cause of action, upon which the complaint in this case is founded, accrued at the date of the construction of the shear dam and the filling of the pile approach to the bridge, or at any time prior to the transfer of title to Joseph Papineau by his predecessor in interest, it would not pass to Papineau, and this action could not be maintained by respondent as administrator. They further contend that the filling in of the pile approach to the bridge created a permanent embankment, and the construction of the shear dam diverting the current of the river against the land of respondent created a permanent source of damage; that if a cause of action accrued at any time, it arose immediately upon the completion of the permanent fill or embankment and the completion of the shear dam; and that aside from the question of the statute of limitations, the damage caused constituted a personal claim in favor of the owner of the land.

That Papineau took the land subject to any previous damages which had accrued may be conceded. (*McFadden v. Johnson*, 72 Pa. 335, 13 Am. Rep. 681; *Roberts v. Northern Pac. R. Co.*, 158 U. S. 1, 15 Sup. Ct. 756, 39 L. ed. 873; *Boise Valley Construction Co. v. Kroeger*, 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968.)    But can it be admitted, as counsel for appellant contend, that, if in the construction of the shear dam and fill by appellant and its predecessors a nuisance was created, it was not a continuing nuisance or trespass which would give rise to a new cause of action on the occurrence of damages resulting therefrom, and that any damage occasioned thereby was original with, and complete

at the time of, the trespass, simply because the nuisance or trespass is in its nature a permanent structure which in all probability will remain during all time? And does the failure on the part of respondent's predecessor to maintain an action for all damages, past, present and prospective, operate as a bar to a recovery in this action, upon the theory that if a cause of action existed it did not pass to Papineau upon the transfer of the property?

Numerous cases are cited by counsel for appellant to the effect that where the cause of injury was permanent and would continue without change, and all past, present and future damages can be ascertained, the damage is original and may be at once fully compensated. One of the leading cases discussed in their brief is that of *Troy v. Cheshire R. Co.*, 23 N. H. 83, 55 Am. Dec. 177, where the rule is stated as follows:

"Whenever a nuisance is of such a character that its continuance is necessarily an injury and when it is of a permanent character, that will continue without change from any cause but human labor, then the damage is an original damage and may be at once fully compensated."

The case of *Fowle v. New Haven & Northhampton Co.*, 107 Mass. 352, and 112 Mass. 334, 17 Am. Rep. 106, counsel for appellant insist is similar to the facts in the case at bar. Upon the first appeal in that case the court said: "The embankment of the defendants was a permanent structure, which, without any further act except keeping it in repair, must continue to turn the current of the river in such a manner as gradually to wash away the plaintiff's land. For this injury the plaintiff might recover in one action entire damages, not limited to those which had been actually suffered at the date of the writ." On the second appeal of this same case the court said: "As a general rule, a new action cannot be brought unless there be a new unlawful act and fresh damage. There is no exception to this rule in the cases of nuisance, where damages after action brought are held not to be recoverable because every continuance of a nuisance is a new injury, and not merely a new damage. The

case at bar is not to be treated strictly in this respect as an action for an abatable nuisance. More accurately, it is an action against the defendant for the construction of a public work under its charter. . . . ."

Counsel for appellant also quote the following rule from Sutherland on Damages, vol. 4, sec. 1042:

"When a wrongful act is done which produces an injury which is not only immediate, but from its nature must necessarily continue to produce loss independently of any subsequent wrongful act, then all the damages resulting, both before and after the commencement of the suit, may be recovered in one action."

And from Freeman on Judgments, sec. 241, they quote, as follows:

"All the damages which can by any possibility result from a single tort form an indivisible cause of action. . . . . For damages alone, no action can be permitted. Hence if a recovery has once been had for the unlawful act, no subsequent suit can be sustained. There must be a fresh act as well as a fresh damage."

The principles of law stated in the authorities cited and relied on by counsel for appellant have been frequently held to be correct when applied to actions to condemn land brought by public service corporations exercising the right of eminent domain or to cases where lands have been taken and suits subsequently brought by the land owners for the purpose of recovering damages for the taking of such lands, treating the taking as if it were under the power of eminent domain. All damages that accrued or that might accrue by reason of such taking arise concurrently with the original taking and must be recovered in one action. The statute of limitations begins to run from that date.

But in the present case the above conditions do not prevail. The land of respondent was not taken or condemned by appellant or its predecessor, and forms no part of its right of way. No damages were complained of and none were occasioned by the construction of the fill in question and the shear dam for the purpose of diverting the current of

the river away from the fill, until 1913, two years subsequent to the date respondent's intestate became the owner of this land. Then only by reason of the fact that appellant and its predecessors in interest, by the construction of the fill, had failed to provide an ample opening to allow the water of the stream during an unusual freshet, which might reasonably have been anticipated, to pass freely into the northerly channel which had at all times been of sufficient size and capacity to carry away any unusual flow of water in the Coeur d'Alene river. (*Harvey v. Mason City & F. D. R. Co.*, 129 Iowa, 465, 113 Am. St. 483, 105 N. W. 958, 3 L. R. A., N. S., 973; *Union Trust Co. v. Cuppy*, 26 Kan. 754; *Eells v. Chesapeake & O. Ry. Co.*, 49 W. Va. 65, 87 Am. St. 787, 38 S. E. 479; *Lawton v. Seaboard Air Line Ry.*, 75 S. C. 82, 55 S. E. 128.)

The facts in this case do not warrant the application of the principles contended for by counsel for appellant. For instance, the case of *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899, 50 L. R. A., N. S., 388, is one of the cases cited in support of appellant's contention. This was an action against two defendants for polluting a stream which flowed through the lands of plaintiff. The decision is based upon the fact that the pollution of said stream was necessarily a constant and continuous injury to plaintiff's land, and for that reason an action for permanent damages accrued when the stream was first polluted.

Respondent in this action having suffered no damages prior to 1913, would not be in a position to maintain an action at any time before that date. His land was not taken. Neither is it included in the railroad right of way. He had no reason to believe that the obstruction placed in the stream by appellant adjacent to his land was of such a character as to ultimately cause damage to his premises. The fact that the space left in the filling of the bridge was sufficient, as far as respondent had knowledge, to satisfactorily take care of the waters of that stream under all conditions up to the year 1913, would preclude him from claiming or seeking damages of appellant for the construction of the fill or dam,

because he was in no position to prove damages until they had actually occurred. (*Miller v. Keokuk & Des Moines Ry. Co.*, 63 Iowa, 680, 16 N. W. 567; *Powers v. City of Council Bluffs*, 45 Iowa, 652, 24 Am. Rep. 792.)

Appellant cites and relies on the case of *Boise Valley Construction Co. v. Kroeger*, 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968. But the principles of law laid down in that case, so far as they involve the question of permanent damages, cannot be applied to the case at bar, for the reason that the facts in these two cases differ materially.

Kroeger's complaint was that the railroad company had constructed its track in such a manner as to encroach upon and appropriate considerably more of his land than he had bargained.to sell to the company. The railroad company had a right to condemn under the constitution and statutes of this state. The construction of its track over Kroeger's land was notice to him of the permanent taking for the purpose of operating an electric railway, and all damages, past, present and prospective, could then have been readily ascertained and determined.

But that is not true under the facts of the case at bar. Respondent was not notified of the taking of his land. In fact, none of his land was taken or encroached upon by the railroad company in the construction of the fill or dam. His land was not located within the company's right of way, but on the opposite side of the river therefrom. It cannot consistently be said that the construction of the bridge and fill constituted a taking of respondent's land which would give a right of action for any damages, past, present or future.

This court in the case of *Boise Valley Construction Co. v. Kroeger, supra,* among other things said: "There seems to be a diversity of opinion among the courts as to particular actions of this character in which one recovery only will be allowed, and that for past, present and prospective damages, and the cases in which a separate recovery will be allowed from time to time for recurring damages that may be sustained by the party. There is a long line of authorities, however, holding that where the acts of the tort-feasor

have been completed and consummated and the causes from which the injury must necessarily flow are patent and obvious, and the injury, if any, is permanent, that past, present, and prospective damages can as easily be estimated in advance as after successive damages have occurred, and that the better rule is to allow only one recovery and permit it to embrace all damages, for past, present, and future injury to the property, . . . . but there is a distinction between cases of nuisance and those cases where the damage arises out of the construction or operation of a railroad, for the reason that such a work or improvement constitutes a public highway, and is authorized and recognized by law, and the right of way itself and all necessary ground incident thereto may be taken in condemnation, so that the road and the work necessary and incident to its maintenance cannot be abated as a nuisance.''

But in the case at bar it appears that there was no condemnation proceedings. There was no taking of respondent's land that arose out of the construction of the railroad. Nor was it necessary for the purpose of operating the railroad. No action has ever been maintained by respondent or his predecessor in interest for damages for the taking of this land.

While appellant was authorized by law to construct its road and to acquire title to land under the right of eminent domain for that purpose, yet this does not relieve it of liability for damages done to adjacent proprietors where individuals would be liable for a like wrong, on the theory that the damage is supposed to be consequential or to follow as a natural result of the construction of the railroad for the benefit of the public. This is particularly true in the absence of any showing by appellant that it exercised the due care and skill required of railroads in providing against floods or damages caused by insufficient openings or the closing up of natural waterways. (*Staton v. Norfolk & Carolina R. Co.*, 111 N. C. 278, 16 S. E. 181, 17 L. R. A. 838.)

In the case under consideration, there was no allegation or proof of an estimate having been made, prior to the con-

struction of the roadbed or at the date of the filling in of the approach to the bridge and the construction of the shear dam, of the drainage area or the usual amount of snow fall, or of any effort made to determine the probabilities of unusual freshets, or of other conditions which from the nature and history of the surrounding country, might reasonably be expected to cause a sudden and unusual rising of the water of this stream.

The construction of the bridge originally and the subsequent filling in of the pile approach, together with the shear dam, was entirely on the property of the railroad company, which occupancy was rightful. These were permanent structures which would continue without change. But if, as a result of their construction, damages subsequently accrued that could not have been foreseen or provided against by adjoining land owners—for instance, as in this case, unusual freshets—we think the respondent can recover such actual damages as he may have sustained.

The rule is that where it is practicable in the construction of a railroad bridge and fill to provide culverts or other reasonable means to allow the free and uninterrupted flow of the waters of a stream at all seasons of the year, and thus avoid damage to adjoining land owners, it is clearly the duty of the railroad company to make such provisions. (*Van Orsdol v. B., C. R. & N. R. Co.*, 56 Iowa, 470, 9 N. W. 379; *Drake v. Chicago, R. I. & P. Ry. Co.*, 63 Iowa, 302, 50 Am. Rep. 746, 19 N. W. 215.)

It was said in the case of *Hill v. Empire State-Idaho Mining & Developing Co.*, 158 Fed. 881: ''Moreover, the damage for which recovery is sought is not the direct, but only the consequential, result of the defendant's acts. So far as appears, it had the right to erect and operate its reduction works. . . . . It was only by reason of the intervening agency of high water, the effect of which was uncertain and contingent, that the defendant's acts indirectly resulted in the injury to plaintiff's land. . . . . Primarily, the action is one to recover damages for the wrongful flooding of land, and, on principle, there is no essential difference between

this case and one where lands are flooded by reason of the careless construction or maintenance of a railroad embankment or bridge, with insufficient provision for taking care of the water of a natural waterway. . . . . The rule is that in case of a nuisance of a permanent character, by the maintenance of which the property of another will be directly and necessarily damaged, a right of action in favor of the person injured accrues at once upon the erection of the objectionable structure, and in one action recovery may be had for the entire damage, both past and prospective, and the statute of limitations begins to run at once. But, upon the other hand, if the structure be a permanent one, and it may not be injurious, and the damage in question does not necessarily and directly flow from its creation or maintenance, no cause of action accrues in favor of any person until such person has received actual injury, and the statute of limitations begins to run only when, and immediately when, actual damage has been inflicted. Successive actions may be brought, in each of which recovery may be had for all damages actually suffered within the period of limitations, regardless of the date of the erection of the structure, to the maintenance of which the damage is indirectly due. The rule is well stated in a note to sec. 180 of Wood on Limitations, 3d ed., where it is said:

" 'In actions for flooding land, limitation begins only when actual damage is sustained therefrom, and not when defendant's dam or other cause of injury is created; and the fact that the first flowage is already barred does not defeat a suit for such continuance of the wrong as occurs within the time limited by the statute.' "

Whether the land is completely destroyed or damaged by partial destruction, the rule would be the same.

Specifications of error numbers 2 and 3 go to the admissibility of evidence. After an examination of the authorities cited by counsel, we have reached the conclusion that the action of the trial court in sustaining the objection to the question propounded to witness Alec Anderson did not constitute reversible error. Nor was the action of the trial court

in admitting the testimony, over the objection of appellant, tending to show the condition of the bank abutting on the Coeur d'Alene river along respondent's land, prejudicial to appellant.

It follows from what has been said in this opinion that the judgment of the trial court must be affirmed, and it is so ordered. Costs are awarded to respondent.

Morgan, J., concurring.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court.

In 1888 or 1889 the Oregon Railroad & Navigation Co., the predecessor in interest of appellant, built a bridge across the Coeur d'Alene river at Cataldo, Idaho, which bridge was about 1,800 feet long and was composed of an open span across the main channel of the river and a long pile approach. At the time said bridge was constructed, and for the purpose of deflecting the current in times of high water away from the pile approach, the company constructed in the channel of said river and at a little distance from the bank, a shear dam or rock crib, and in 1902 and 1903 the company filled in a considerable portion of said piling. It thus appears that said shear dam was constructed about twenty-five years before this action was brought and about twenty-two or twenty-three years before Papineau, now deceased, purchased said land.

Said railroad bridge and shear dam are not nuisances *per se*. They were both permanent structures which, without any further act except keeping them in repair, would continue to turn the current of the river, to a certain extent.

This is an action against the defendant for the construction of a public work under its charter, since the railroad was constructed for the use of the public.

While the defendant has not pleaded the statute of limitations, as provided it may in sec. 4213, Rev. Codes, it has pleaded a sufficient defense which, if proven, would defeat the plaintiff's right to recover. It will be noted that said section does not prohibit pleading the statute of limitation by

stating facts that clearly show that such statute has run, but simply provides that such statute "may" be plead as therein provided, thus making a permissive innovation in the common-law rule of pleading.

The question is clearly raised as to whether Papineau owned this cause of action, provided one existed. The shear dam and railroad were built twenty-two or twenty-three years before he purchased said land. They were permanent structures at the time he purchased this land, and under all of the facts of this case I do not think he has any cause of action against the defendant because of the construction of said railroad and shear dam.

From a consideration of the authorities on the question under consideration, it is more accurate to say, in the case at bar, that no cause of action, under the facts stated, is vested in respondent, than that the statute of limitations has run. Of course, a plea of that statute presupposes a cause of action in the plaintiff,—a cause of action that is barred.

My conclusion is that the alleged cause of action sued upon was never in the plaintiff, but existed only in favor of the owner of said land at the time the shear dam was built and the fill constructed, if at all. This shear dam was a permanent structure; had existed for about twenty-five years when this action was brought; was in existence about twenty-two years before plaintiff purchased his land. During all of those years, as far as the record shows, no great damage was ever done to said land by freshets or high water; but because of an unprecedented rise in the river, caused by floods, or, as some would put it, by the act of God, this damage was done. Under all of the facts of the case, I do not think the plaintiff has a cause of action or that the defendant ought to be held liable for any damages in this action.

Petition for rehearing denied.