(No. 5706.   September 21, 1934.)

IDAHO GOLD DREDGING CORPORATION, a Corporation, Respondent, v. BOISE PAYETTE LUMBER COMPANY, a Corporation, Appellant.

[37 Pac. (2d) 407.]

Alfred A. Fraser and Richards & Haga, for Appellant.

Hawley & Worthwine and Luther W. Tennyson, for Respondent.

RICE, District Judge.—This case has been before this court on appeal from an order granting a new trial. The decision is found in 52 Ida. 766, 22 Pac. (2d) 147. The facts were stated in the opinion on the former appeal and it is unnecessary to restate them here.

We shall consider assignments of error by the appellant, but not in the order in which they are set out in appellant's brief.

Appellant contends that the cause of action set forth in the third amended complaint is not assignable and hence that plaintiff is not the real party in interest. Section 54-402, I. C. A., is as follows: "A thing in action arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successors in office." The thing

in action in this case arises out of an alleged violation of a right of property and under the section of the code above quoted is assignable. (*MacLeod v. Stelle*, 43 Ida. 64, 249 Pac. 254; *Caledonia Ins. Co. v. Northern Pac. Ry. Co.*, 31 Mont. 46, 79 Pac. 544; *Stapp v. Madera Canal & Irrigation Co.*, 34 Cal. App. 41, 166 Pac. 823.)

Appellant claims that a jury is bound to accept the instructions of the court as the law and if the jury disregards the instructions and brings in a verdict contrary thereto, the verdict cannot stand, whether the instructions were right or wrong. Appellant argues that the respondent, plaintiff in the case below, abandoned all claim that its mining claim was injured by the deposit of oil and grease upon the surface of the mining grounds and rested its case upon the theory that the oil and grease were confined to the waters of the stream and while being carried in and upon the stream did no damage to the property. Appellant further argues that the damage to the property was occasioned by the mining operations of respondent in that the mining operations trapped the oil and grease in a pond and mixed the oil on the water with the gold in the gravel deposit and therefore itself caused whatever damage occurred; that the pollution of the waters of the stream was not the proximate cause of the destruction of respondent's property, but, on the contrary, that the action of respondent itself in carrying on its mining operations and mixing the oil and grease with the sand and gravel and the gold contained therein was the cause of the damage and that the injury caused by plaintiff to its property cannot be the basis for damages against the defendant, and that therefore the jury did not follow instruction No. 9, which was quoted in the former opinion.

From this argument appellant concludes, quoting from its brief: "It is too clear for argument or contention that no damage whatever can be recovered in this case except on the basis of delay, and the verdict, as heretofore stated, was not based on delay and cannot be sustained on that theory. The action was brought on the theory of complete destruc-

tion of property and not for damages for delay.'' If the argument were sound it would not lead to the conclusion that it would justify damages for delay. It would lead to the conclusion that the respondent was not entitled to recover any judgment and that the jury should have been instructed to find for the defendant. The trial judge reached the same conclusion.

We are of the opinion, however, that the dredging operations by the respondent were not the proximate cause of the injury to the mines. In 22 R. C. L., page 154, it is said: ''Where damage has occurred while the defendant's own wrongful act was in force and operation he ought not to be permitted to set up as a defense that there was a more immediate cause of the loss if that cause was put into operation by his own wrongful act; and to entitle the defendant to such exemption he must show not only that the same damage might have happened, but that it must have happened, if his negligent act had not been committed.'' The author cites in support of the text: *Beauchamp v. Saginaw Min. Co.*, 50 Mich. 163, 15 N. W. 65, 45 Am. St. 30. The opinion in that case in support of the rule above quoted goes on to say: ''This case would seem to come clearly within the third rule laid down by Mr. Justice Cooley in his work upon Torts, p. 70, where the authorities are very fully collected: 'If the original act was wrongful, and would naturally, and according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which are innocent.' ''

We assume that appellant concedes that it might be liable for delay occasioned to respondent's mining operations on the theory that the oil and grease were abatable in fact. We need not pause to consider the theory that the nuisance was legally abatable, because the pollution of the stream by oil and grease is not protected by any statute or the powers of eminent domain. It is conceded that a nuisance that is thus legally abatable may sometimes cause permanent in-

juries. A nuisance that is legally abatable may thus sometimes be regarded for the purpose of measuring damages as if it were permanent. The claim that the nuisance in this case was in fact abatable was considered in the former decision in this case and we are satisfied with the conclusion there reached.

The fifth specification of error is as follows: "The court erred in giving to the jury instruction No. 7, on the Statutes of Limitations, and particularly in permitting the jury to consider any damage resulting after June 25, 1925, in view of the fact that the third amended complaint, setting up a new cause of action was not filed until March 29, 1930." The next error assigned is the failure of the court to give defendant's requested instruction No. 10, which is as follows: "You are instructed that for any damage, if any, done to plaintiff by any oil or grease coming from defendant's logging operation down upon plaintiff's mining claims or into the waters of Grimes Creek or upon its dredge pond prior to March 10th, 1926, plaintiff cannot recover; and this rule applies whether the plaintiff was operating its dredge or not."

We presume the appellant in the requested instruction just quoted intended to specify March 29, 1926, instead of March 10th.

The next error specified is that the court erred in refusing to give defendant's instruction No. 4, which is as follows: "The jury are instructed that the plaintiff is not entitled to recover for damages to or the gold value contained in its undredged ground."

These specifications of error may be considered together. They depend for their validity upon the question as to whether the third amended complaint, upon which the case was tried, stated a new cause of action. Since obviously, if it did state a new cause of action, it would not sustain a judgment for damages occurring more than four years before the date of its filing. The question of the undredged ground is involved with the question of a new cause of action.

Appellant contends that the first two complaints set forth that the damages occurred by reason of oil and grease from the defendant's operations being spread over and upon the surface of plaintiff's mining claims and that in the third amended complaint that theory was abandoned and it was alleged that the damages occurred by reason of the pollution of Grimes Creek by the defendant.

In the original complaint it was alleged that the oil and grease accumulated over the surface of respondent's mining claims and that the dredging operations caused the oil and grease so deposited to become mixed with the mercury and gold so that the gold would not amalgamate, and the third amended complaint alleged that the oil and grease were carried on Grimes Creek and into the dredge pond and by means of the dredging operations became mixed with the mercury and gold so that the gold could not be saved. This is not stating a new cause of action. It is merely alleging a different mode or manner in which the oil and grease were brought to the dredging operations and thereby contaminated the mercury and gold.

Another reason for contending that a new cause of action was stated in the third amended complaint is that it included additional portions of the mining claims claimed to have been damaged by the defendant and which increased the amount of damages, by the sum of $107,000. The additional portions of the mining claims referred to were the undredged portions thereof. If the original complaint failed to state facts showing that the undredged portions of the mining claims were damaged there would be a new cause of action.

Examining the original complaint we find it alleged that in the process of the dredging operations the oil and grease unavoidably fouled and contaminated the gold, silver and mercury. It is further alleged that after the oil and grease had been so distributed or mixed with the said placer deposits and the minerals therein, the same could not be removed so as to prevent loss of said minerals, beyond capture or recovery.

These are general allegations and were applicable to the undredged portions of the claims as well as to the portions which had been dredged. It does not allege the total destruction of the mining claims as such, but it does allege in effect that by reason of the oil and grease the mining claims could not be dredged without loss, and we think this is the gist of the action as set out in the original complaint.

Whether the loss was a partial loss or a total loss was a matter of degree and would depend upon the proof. After the last amendment the character of the proof would be the same while possibly the *quantum* of the proof might not be the same. The legal measure of damage also would be the same. After the general allegations above referred to, the complaint states that a certain number of cubic yards of the mining claims had been run through the dredge and stated the amount of loss of gold and silver resulting from the dredging operations and asked for damages only for the loss resulting from said dredging operations.

We do not think that these later allegations last referred to affected the nature of the cause of action set out in the original complaint. They state a claim for damages less than could have been claimed under allegations of the original complaint. The amendment calls for damages which might have been claimed under the cause of action stated in the original complaint. An amendment properly setting out a cause of action defectively stated in the pleading before amendment does not state a new cause of action. We think, therefore, that defendant's requested instructions No. 10 and No. 4 were properly refused and that the court's instruction No. 7, so far as the same is challenged, was correct. Reference may be made to 37 C. J. 1074 et seq. and to 49 C. J. 507 et seq. for a general discussion of the introduction and effect of new causes of action by amendment of pleadings.

Appellant also claims that the court erred in that it failed to instruct the jury as to the amount of oil required in water as to constitute interference in dredging operations

or that would constitute total destruction of property. We think that this matter is a question of fact.

In this connection appellant argues that it was error for the court to instruct the jury that the statute of limitations did not commence to run until the oil and grease came down Grimes Creek to an extent to interfere with mining operations; that the real cause of action was the pollution of the creek, and that the cause of action arose whenever pollution occurred to any extent.

■■ ■■ It has been held that where land adjoining a stream is injured by obstruction and pollution of the stream, the injury is not the direct but is a consequential result of such obstruction and pollution and a cause of action for such an injury does not accrue until actual damage has occurred. (*Hill v. Empire State-Idaho Mining & Development Co.*, 158 Fed. 881.)

In the case at bar the injury complained of clearly was not direct but was consequential. The instruction complained of did not advise the jury that the cause of action did not accrue until actual damage had occurred but, on the contrary, did advise the jury that the cause of action accrued at the time the oil and grease came down Grimes Creek to an extent sufficient to interfere with mining operations. The instruction was not prejudicial to appellant. (See *Rogers v. Oregon-Washington R. R. & Nav. Co.*, 28 Ida. 609, 156 Pac. 98; *Boise Development Co., Ltd., v. Boise City*, 30 Ida. 675, 167 Pac. 1032; *Heckaman v. Northern Pac. Ry. Co.*, 93 Mont. 363, 20 Pac. (2d) 258.)

■■ Appellant also urges that there was no legal proof of damages such as is required by the prior decisions of this court, because there was no evidence as to the value of the ground immediately before and immediately after the pollution of the stream by appellant to an extent that would interfere with mining operations. Even if the questions propounded, asking for the opinion of the witnesses as to the value of the mining claims on June 25, 1925, and then after the dredging operations, were not proper, we are of the opinion that the asking and the answering of

those questions did not affect the substantial rights of the appellant or mislead the jury. There was sufficient evidence introduced to enable the jury to reach a verdict on that theory of the case if those questions and answers had not been given.

■ We have endeavored to arrive at the principle of law which should govern this case. It is true the verdict of the jury was for a large sum. The evidence in the case was conflicting, and doubtless would be weighed differently by different reasonable minds, but we think there was sufficient evidence to support the verdict. The appellant had its day in court and had a trial according to the usual procedure of the courts of this jurisdiction. We conclude that the appellant has not been denied the equal protection of the law and has not been deprived of its property without due process of law. (*Stickney v. Kelsey,* 209 U. S. 419, 28 Sup. Ct. 508, 52 L. ed. 863; *Bonner v. Gorman,* 213 U. S. 86, 29 Sup. Ct. 483, 53 L. ed. 709; *Howard v. Kentucky,* 200 U. S. 164, 26 Sup. Ct. 189, 50 L. ed. 421.)

■ Appellant contends that a judgment set aside by the trial court on motion for a new trial bears interest only from the date of its reinstatement and that the rate of interest should be that in force at the time of such reinstatement.

When a defendant, against whom a judgment has been entered, on motion for a new trial, secures an order setting aside and vacating the judgment, and thereafter upon appeal such order is reversed and a reinstatement of the judgment is ordered by the appellate court, the judgment is reinstated as of the date on which the original was entered. We think the reversal would have that effect without a formal order of reinstatement.

■■ Interest upon a judgment is not a matter of contract but is wholly statutory. A judgment can bear interest at such a rate only as the law provides. Since the judgment in this case was entered chapter 197 of the 1933 Session Laws reduced the rate of interest upon judg-

ments from seven per cent to six per cent. After the effective date of the amendment there was no law in this state authorizing interest upon judgments at any other rate than six per cent. The judgment in this case bears interest at the rate of seven per cent per annum from entry, until the effective date of the amendment, and six per cent thereafter. The fact that the original judgment on its face provides for interest at seven per cent is of no consequence since the court had no power to provide for a rate other than that provided by law. (*Wyoming Nat. Bank v. Brown,* 9 Wyo. 153, 61 Pac. 465; *Stanford v. Coram,* 28 Mont. 288, 72 Pac. 655, 98 Am. St. 566; *Palmer v. Laberee,* 23 Wash. 409, 63 Pac. 216.)

The judgment is affirmed.

Givens, Morgan, Holden and Wernette, JJ., concur.

Petition for rehearing denied.