[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 685 
This action was commenced by Idaho Gold Dredging Corporation, hereafter called the mining company, against Boise Payette Lumber Company, hereafter called the lumber company, and United Pacific Insurance Company, formerly United Pacific Casualty Insurance Company, hereafter called the surety, to recover $5,000 alleged to have been paid by the mining company to its attorneys for their services rendered in a suit prosecuted by the lumber company against the mining company, wherein the former sought to enjoin the collection of a judgment against it and in favor of the latter. In the injunction suit an undertaking was given, as required by I. C. A., sec. 6-405, executed by the lumber company and the surety, wherein it was recited:
"NOW, THEREFORE, we, the undersigned, in consideration of the issuing of said injunction do jointly and severally undertake in the sum of $5,000 and promise to *Page 688 
the effect that in case said injunction shall issue the said plaintiff will pay to the said party enjoined such costs, damages and reasonable counsel fees not exceeding the sum of $5,000 as such party may incur or sustain by reason of the injunction if the court finally decide that the plaintiff was not entitled thereto."
The case has been before us heretofore on appeal from a judgment of dismissal following the sustaining of a demurrer to the complaint (Idaho Gold D. Corp. v. Boise Payette L. Co.,60 Idaho 127, 90 P.2d 688) and a statement of the facts appearing in the complaint will be found in that opinion. For additional history of the litigation between the mining company and the lumber company, leading to this case, see Idaho Gold D.Corp. v. Boise Payette L. Co., 52 Idaho 766, 22 P.2d 147;54 Idaho 765, 37 P.2d 407; Boise Payette Lbr. Co. v. IdahoG. D. Corp., 56 Idaho 660, 58 P.2d 786.
The lumber company and surety filed an answer to the complaint and incorporated therein was a cross-complaint, by the former against the mining company, wherein it was alleged that the mining company had recovered a judgment against the lumber company in the sum of $100,000, together with costs, inIdaho Gold Dredging Corporation v. Boise Payette LumberCompany, 54 Idaho 765, 37 P.2d 407, as damages alleged to have been sustained from oil and grease used by the lumber company in its logging operations, which oil and grease became mixed with the sand and gravel of certain placer mining claims belonging to the mining company, located along Grimes Creek, in Boise County, and which were being dredged by it, rendering it impossible to extract from said claims and save gold which was present therein. Commencement of suit by the lumber company against the mining company, to enjoin the collection of the judgment, is alleged in the cross-complaint; also that a demurrer to the complaint was, by the district court, sustained and the action was dismissed; that an appeal from the judgment of dismissal was taken to this court and "that on said appeal the lumber company contended in its brief and in its oral argument before the supreme court that it would be most unconscionable and unfair *Page 689 
for the mining company to collect from the lumber company the said judgment of $100,000, which represented the full value of said mining property, and at the same time hold and have the mining property which had now been restored to its full value because the oil and grease theretofore complained of no longer polluted the water of Grimes Creek; that because of such changed conditions the mining company should be enjoined from collecting its said judgment and a new trial granted the lumber company in the cause in which said judgment had been entered; that in answer to said argument and for the purpose of persuading the court not to grant a new trial or enjoin the mining company from collecting its said judgment, counsel for the mining company stated in their brief on said appeal: 'We are authorized by the mining company to say that if the lumber company wants that land it can have it and we will give a deed to it and let the lumber company recoup its losses,' And such statement was repeated in the oral argument by counsel for the mining company before the supreme court."
A general demurrer to the cross-complaint was sustained. The issues framed by the complaint and the answer thereto were tried to a jury and, at the close of evidence introduced on behalf of the mining company, on motion made by counsel for the lumber company and the surety, a nonsuit was granted and a judgment of dismissal of the action was entered. The mining company has appealed from the judgment and the lumber company and the surety have cross-appealed, stating in their notice:
"NOW, THEREFORE, Said defendants, Boise Payette Lumber Company a corporation and United Pacific Insurance Company, a corporation, formerly United Pacific Casualty Insurance Company, a corporation, hereby appeal to the Supreme Court of the State of Idaho from so much of the judgment so made and entered in the above entitled cause on or about the twenty-fifth day of April, 1940, as bars the said defendant from obtaining judgment on said cross-complaint and as renders final the order and decision of said court sustaining plaintiff's demurrer to said cross-complaint." *Page 690 
Luther W. Tennyson and the firm of Hawley Worthwine were attorneys for defendant (appellant here) in the injunction suit. They demurred to the complaint, the demurrer was sustained, and a judgment dismissing the suit followed. An appeal was taken to this court and the judgment was affirmed (56 Idaho 660, 58 P.2d 786). The Supreme Court of the United States was petitioned for a writ of certiorari, which was denied (299 U.S. 577, 57 Sup. Ct. 40, 81 L. ed. 425).
In this case appellant proved the services rendered by its attorneys in the injunction suit, and the reasonable value thereof. To prove payment of the attorneys' fees, it introduced in evidence, as plaintiff's exhibit 1, a receipt which is as follows:
 "RECEIPT
"Hawley Worthwine and Luther W. Tennyson do hereby acknowledge the receipt of the sum of $5,000 in full payment of all fees and expenses from the Idaho Gold Dredging Company in connection with their services as attorneys in the case ofBoise-Payette Lumber Company vs. Idaho Gold Dredging Company
injunction action.
"Dated at Boise, Idaho, this 20th day of October, 1936.
 HAWLEY WORTHWINE, By Jess Hawley By Luther W. Tennyson."
A number of efforts were made by appellant's counsel to introduce testimony explaining the presence of the word "expenses" in the receipt, and to show that the entire sum of $5,000 was paid to the attorneys as fees, and no part of it as expenses. Questions seeking to elicit such testimony were objected to and the objections were sustained. As an example, S.K. Atkinson, president of appellant corporation, was asked by its counsel, with respect to the word "expenses" appearing in the receipt:
"Q. Mr. Atkinson, of that five thousand dollars, how much was attorneys' fees and how much was expenses, if you know?"
Mr. EBERLE (of counsel for respondent): "Well now just a moment. It's an attempt to vary that receipt. *Page 691 
If there's any statement that he has, or any evidence as to the items and division, that should be produced; but not his testimony to change that receipt."
The COURT: "The objection is sustained."
The following tender of proof was made:
Mr. JOHNSTON (counsel for appellant): "If the court please, I offer to prove by this witness that the words 'fees and expenses' were in the receipt merely for the purpose of obtaining a full release from all liability, and did not refer to any known expenses whatsoever."
Mr. EBERLE: "We object to the offer because apparently the intention is to alter the purport of the instrument from a receipt to a general release, and there is nothing ambiguous about 'fees and expenses' which needs explanation, or any reason given why they were inserted."
The COURT: "The objection is sustained and the offer denied."
These rulings were erroneous. A simple receipt is onlyprima facie evidence of the truth of statements receipts therein, and parol evidence is admissible to explain or contradict it. (Braghorn v. Moore, 6 Idaho 531, 57 P. 265;Gagnon v. Molden, 15 Idaho 727, 99 P. 965; Wheeler v. Gilmoreetc. R. R. Co., Ltd., 23 Idaho 479, 130 P. 801; Berryman v.Dore, 43 Idaho 327, 251 P. 757.)
As part of the cross-examination of appellant's witness, Atkinson, there was introduced in evidence defendant's exhibit 3, being a contract entered into June 20, 1929, between Claude W. Gibson and Hawley Hawley, referred to in the contract as "the attorneys" and the mining company, therein referred to as "the client." The contract was one of employment of said attorneys by appellant, wherein they agreed to act as its attorneys in an action to be commenced against the lumber company to recover for damages to appellant's mining claims caused by oil and grease being placed on the watershed of Grimes Creek and its tributaries by the lumber company in its logging operations.
In that contract it was agreed:
"I. That said attorneys are empowered and agree to prepare the papers and file an action in the District *Page 692 
Court of Idaho in and for Ada County, or other proper Court, to enforce said claim or claims or cause or causes of action for and on behalf of said client and against said Lumber Company or other proper parties, and to prosecute the same to judgment in said Court, using their best efforts that such judgment be for said client; to appear and defend all appeals taken by the defendant in said action; to take such appeals for such client as they deem proper or advisable; and generally to collect on said claims and causes of action or any of them or on any judgment for said client by execution or otherwise, whenever the same may be lawfully done. If re-trial of the action is ordered or authorized by Court it shall be optional with the said attorneys to continue as the client's attorneys in said re-trial, and if they elect not to continue they shall thereby forfeit all right to compensation under this agreement."
In the contract it was further stipulated that the sole compensation of the attorneys was to be certain percentages of the money, or property, received or collected, as a result of the action, or of a compromise or settlement thereof.
It appears from the record that Luther W. Tennyson became and was successor of Claude W. Gibson, and that the firm of Hawley Worthwine became and was successor of Hawley Hawley, as attorneys for the mining company.
After defendant's exhibit 3 was introduced appellant attempted to prove, by parol evidence, that after the injunction suit was commenced an agreement was entered into between the mining company and its counsel for the payment of attorneys' fees for services to be rendered in that suit. Numerous questions were propounded to the witness, Atkinson, by appellant's counsel, the apparent purpose of which was to show that an oral agreement had been reached between the mining company and its attorneys for the payment of fees for services to be rendered in the injunction suit. Objections were sustained to these questions, whereupon counsel for appellant made the following tender of proof:
"If the court please, I offer to prove by this witness *Page 693 
that there was a complete novation of this contract, [defendant's exhibit 3] so far as the injunction case was concerned, and that it was understood and agreed between Hawley and Worthwine and Luther W. Tennyson on one hand and the Idaho Gold Dredging Corporation on the other, completely abrogating the terms of that contract so far as it may have applied to it and so far as the contract for fees in the injunction action was concerned."
Mr. EBERLE: "And we object to the offer of proof upon the ground and for the reason that such an understanding would be without consideration; would not be binding upon the parties hereto; it is not within the issues, and does not tend to prove or disprove any of the issues in this case."
The COURT: "As made, I will have to sustain the objection — to the offer as made. The offer is denied, and the objection is sustained."
Counsel for appellant propounded this question to the witness, Atkinson:
"Q. Will you tell in your own words, Mr. Atkinson, just what you said and just what the attorneys said at the time these fees of $5,000 were paid?"
Mr. EBERLE: "Now we would like to make a formal objection at this time. We don't know what this proof is going to be.
"It is immaterial and irrelevant, and does not tend to prove any issue in the case, and the question is too general to object any more definitely."
The COURT: "Let me see the receipt."
(The Court examines plaintiff's exhibit 1.)
The COURT: "Now read the question."
(Pending question read.)
(The Court examines defendant's exhibit 3.)
The COURT: "The objection is sustained. That would be immaterial in this case."
Luther W. Tennyson, a witness called by appellant, testified that he and the firm of Hawley Worthwine were attorneys for the mining company in the injunction suit. He was asked by appellant's attorney:
"Q. Was there ever any understanding, Mr. Tennyson, *Page 694 
that you were to receive any specific amount for your services in the injunction action?"
Mr. EBERLE: "And we object to that as calling for a conclusion of the witness, and not material or within the issues."
. . . . . . . . . . . .
The COURT: "You may answer that."
"A. There was never any understanding that we would receive any specific amount for our services in the injunction case."
"Q. What was the understanding?"
The COURT: "Just a minute."
Mr. EBERLE: "Well, we object to that as calling for a conclusion of the witness, and at variance of the contract introduced in evidence as exhibit 3, and not within the issues."
The COURT: "If there was an agreement for attorneys' fees, there wouldn't be a quantum meruit action. The objection is sustained."
That ruling was erroneous. If there was an agreement of employment by the mining company of the attorneys, and no agreement as to the amount of their fees, and thereafter a reasonable attorney's fee was agreed upon and paid, an action to recover the amount so paid can be maintained on the injunction bond.
This question was propounded to the witness by counsel for appellant:
"Will you state, Mr. Tennyson, what was said concerning the relations of yourself and the Idaho Gold Dredging Corporation in the injunction action?"
Mr. EBERLE: "We object to that —"
"Q. (Mr. Johnston continuing) " — if anything?"
Mr. EBERLE: "We object to that as being immaterial. The contract; exhibit 3, covers all these services, and cannot be changed or varied, and any such change would be without consideration."
The objection was sustained.
The injunction suit was commenced February 15, 1935 (Boise Payette Lbr. Co. v. Idaho Gold D. Corp., 56 Idaho 660,663, 58 P.2d 786, 787). Plaintiff's exhibit 5 is a *Page 695 
carbon copy of a letter written by Mr. Hawley, of the firm of Hawley Worthwine, dated March 4, 1935, a part of which is as follows:
"Now, the question comes up in connection with the new action brought by the lumber company against your company. That, of course, was not in any way covered by our contract. I am not sure what procedure is going to be necessary to enforce our judgment. It is possible that we will have to sue the First National Bank. Of course, whatever is necessary to be done will have to be done no matter what procedure it entails, but this new action and any other actions and, of course, appeals from this new action require additional attorneys' fees. I am inclined to think without getting too deeply into the matter that it would be a good idea for you and for the attorneys to enter into a contract to cover all phases of the situation regardless of the number of actions which may be brought. I personally feel that it would be a fair proposition for you to take your $7500 out of the judgment, then Mr. Tennyson and myself take our $250 and $2500 respective cost allowances out, and then divide the balance of the judgment 50-50, the attorneys agreeing to do all the law work involved in the situation.
"We should get together on this."
After Mr. Hawley had identified the copy of the letter as one he had written to the mining company, he was asked by counsel for appellant:
"Q. Will you state what conversations or communications you may have had with them after that letter was written, concerning the subject matter of the letter?"
Mr. EBERLE: "We object to that as being immaterial, irrelevant, and not within the issues; and an attempt, apparently, to vary and change the contract with reference to services."
The COURT: "The objection is sustained."
The ruling was erroneous. Parties to a written contract may, by oral agreement, made subsequent to its execution, modify its terms or further contract with respect to its subject matter. (Miller v. Donovan, 13 Idaho 735, 92 P. 992; Russell Barbourv. Lambert, 14 Idaho 284, 94 P. 54; Brooks v. Beach, 50 Idaho 185,
 *Page 696 294 Pac. 505; Smith v. Washburn-Wilson Seed Co., 54 Idaho 659,34 P.2d 969).
A question is presented here as to the admissibility of evidence of the value of services performed by appellant's attorneys in opposing the petition to the Supreme Court of the United States for a writ of certiorari. The language of the bond is: "the said plaintiff will pay to the said party enjoined such costs, damages and reasonable counsel fees not exceeding the sum of $5,000 as such party may incur or sustain by reason of the injunction if the court finally decide that the plaintiff was not entitled thereto."
The purpose of the suit was to prevent, by injunction, the collection of the judgment which the mining company had recovered against the lumber company. In this case, reported in60 Idaho 127, 135, 90 P.2d 688, 691, we said:
"The trial court held the complaint insufficient and this court affirmed the action of the trial court. (56 Idaho 660,58 P.2d 786). The bond sued upon here was not executed and filed until after the hearing on order to show cause; and it follows that any legal services rendered prior to the execution of the bond would not be chargeable to this contract. (Ferrell v. Coeur d'Alene St. Joe Trans. Co., 29 Idaho 118,157 P. 946). On the other hand, any service rendered thereafter, in securing or maintaining the dissolution of the writ, is clearly within the terms of the contract and the statute. (See Scholtz v. American Surety Co., 35 Idaho 207,206 Pac. 187.)"
The petition for writ of certiorari was a part of the litigation commenced by the lumber company to prevent, by injunction, the collection of the mining company's judgment, and made it necessary for the mining company to be represented by counsel in opposition thereto. The court, having finally decided the lumber company was not entitled to injunction, reasonable attorneys' fees, not exceeding $5,000, which appellant had paid, or had become liable to pay by reason of it, including compensation for services rendered in opposition to the petition for writ of certiorari, are within the meaning of the bond and of the statute requiring it to be given. Evidence offered to prove the amount and value of services rendered *Page 697 
by the mining company's counsel in opposition to the petition for the writ of certiorari should have been admitted.
The cross-appeal presents for review the ruling of the trial judge sustaining the demurrer to the cross-complaint. The lumber company sought by the cross-complaint to recover damages from the mining company because of its failure to convey the mining claims to the former, pursuant to a statement made in this court, in the mining company's brief and in oral argument by its counsel, when the injunction suit was being heard on appeal, as follows:
"We are authorized by the mining company to say that if the lumber company wants that land it can have it and we will give a deed to it and let the lumber company recoup its losses."
We are unable to construe that statement to mean that the mining company was offering to convey its claims to the lumber company in an effort to convince us the judgment of the trial court dismissing the injunction suit, for failure of the complaint to state a cause of action, should be affirmed. There is nothing in the opinion affirming that judgment which would justify a suspicion that our decision was based on any such theory. An offer by the mining company, however made, to deed the mining claims to the lumber company, could have no bearing on the question before us, which was: Were the facts stated in the complaint sufficient to constitute a cause of action, or to justify granting to the plaintiff in that case the injunctive relief sought by it? What the mining company was willing to do, or intended to do, with its claims could have no possible bearing on that question. The lumber company did not accept the offer of title to the claims, but continued the litigation, as heretofore pointed out.
The demurrer to the cross-complaint was properly sustained, for the reason that the attorneys for the mining company had no authority to bind their client by the statement relied on by the lumber company as a basis for its cross-complaint. I. C. A., § 3-202 contains the following provision:
"An attorney and counselor has authority:
"1. To bind his client in any of the steps of an action *Page 698 
or proceeding, by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise."
The unaccepted offer relied on by cross-complainant was not an agreement; was not filed with the clerk as such, and was not entered upon the minutes of the court.
We approve the action of the trial judge in sustaining the general demurrer to the cross-complaint, and we find no merit in the cross-appeal.
The judgment of nonsuit, dismissing the action of the mining company, is reversed and the cause is remanded for a new trial. Costs are awarded to appellant.
Givens, Acting Chief Justice, Holden, J., and Sutphen, D.J., concur. Sutton, D.J., concurs in the conclusion.
 On Petition for Rehearing July 10, 1941.