# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47364

<table>
<tr><td>

MARK J. RADFORD, an individual, and
RADFORD CATTLE, LLC, an Idaho
limited liability company,

   Plaintiffs-Counterdefendants-
   Respondents-Cross Appellants,

v.

JAY VAN ORDEN, an individual,

   Defendant-Counterclaimant-
   Appellant-Cross Respondent,

and

SEVEN J RANCHES, INC.,

   Defendant-Counterclaimant-
   Appellant.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Boise, January 2021 Term

*Amended* Opinion filed: March 22, 2021

Melanie Gagnepain, Clerk

</td></tr>
</table>

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Darren B. Simpson, District Judge.

The judgment of the district court is <u>affirmed</u> as to Van Orden and Seven J's appeal; and <u>affirmed in part, reversed in part, and remanded</u> as to Radford's cross-appeal.

Cooper & Larsen, Chtd., Pocatello, for Appellant. J.D. Oborn argued.

Parsons Behle & Latimer, Idaho Falls, for Respondents. Jon A. Stenquist argued.

---

MOELLER, Justice

This litigation stems from the contentious relationship between adjacent landowners over subjects as old as the American West: land, cattle, and fence lines. Respondent Mark Radford sued Appellant Jay Van Orden for damages from trespass of lands and trespass of cattle, among other claims, and also sued Appellant Seven J Ranches, Inc. ("Seven J") for reimbursement for the

construction of a partition fence pursuant to Idaho Code section 35-103. The two cases were later consolidated.

Upon Van Orden's motion for summary judgment, the district court determined that Radford had standing to sue Van Orden for trespass, even though Radford was not the property owner when the trespass occurred, because the previous property owner executed an assignment of claims to him. After a five-day bench trial, the district court found Van Orden was liable for trespass and awarded damages to Radford, and required Seven J to reimburse Radford for one half of a constructed partition fence. The district court also found Van Orden was not liable for trespass of cattle and ordered Radford to construct a gate at the southern edge of his property to allow Van Orden to access an easement that runs across Radford's property. The district court determined Radford to be the overall prevailing party and awarded attorney fees only against Seven J. Van Orden and Seven J appeal the district court's standing determination on summary judgment, the damages awarded against Van Orden on Radford's trespass claim, the reimbursement awarded on the partition fence claim against Seven J, and the prevailing party determination for purpose of awarding attorney fees. Radford cross-appeals the district court's denial of his claim for trespass of cattle damages and the district court's requirement that he construct a gate for Van Orden at the edge of his property.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[1]

In January of 2017, Mark Radford purchased property in Bingham County from the Thompson family. The property spans two discrete, yet contiguous tracts of land: the north parcel lies in the Homer Basin Unit and the south parcel lies in the Outlet Ridge Unit. The Homer Basin Unit is enclosed by fences, but the land inside consists of mostly open range. A fence also encloses the Outlet Ridge Unit. Seven J owns a large portion of the land within the Outlet Ridge Unit. The Outlet Ridge Unit also contains Radford's Outlet Ridge property, most of Seven J's property, and two Idaho Department of Lands (IDL) parcels. Van Orden leases land both in the Homer Basin Unit and the Outlet Ridge Unit from the IDL.

---

[1] Most of the background facts are taken from the district court's extensive Findings of Fact and Conclusions of Law following trial.

Since the 1990's and prior to Radford's purchase of the Thompson property, Van Orden had leased the property in the Outlet Ridge Unit from the Thompson family. In May of 2015, Ted Thompson passed away. Ted Thompson's son, Matthew Thompson, agreed to lease the property to Van Orden for the 2015 grazing season. This oral lease was not renewed for the 2016 season, the parties never spoke about leasing it again for the 2016 season, and Matt Thompson removed Van Orden's name as the lessee with the respective State offices. Despite these facts, and the fact that Van Orden failed to pay any rent to Matt Thompson for the 2016 grazing season, Van Orden nevertheless assumed the lease continued.



**Figure 1. Map of Homer Basin and Outlet Ridge Units.**

In May of 2016, Shirlee Thompson, individually and as the personal representative of the Estate of Ted Thompson, entered into a purchase and sale agreement with Radford for the real property in the Homer Basin Unit and the Outlet Ridge Unit. The purchase was finalized in January of 2017. On December 29, 2016, before the sale of the property closed, Shirlee Thompson granted

the IDL an easement over her Homer Basin Unit and Outlet Ridge Unit properties (purchased by Radford). Throughout the litigation, the parties refer to this easement as the "Orange Road." The easement is binding on Shirlee Thompson's successors and assigns. The easement reads in part:

> This easement is specifically limited to *ingress and egress* for the control, management, administration, and use of [State] lands, or resources thereof, for the purpose of, including but not limited to, hauling logs and other forest products, hauling minerals, including sand and gravel, hauling agricultural products, moving livestock to and from [State's] lands, agriculture uses, all commercial uses and leasing including energy production and transportation, for access for recreation, and fire prevention and control.

(Emphasis added). Radford concedes that Van Orden had a right to use the Orange Road, and as a lessee of IDL lands in the Outlet Ridge and Homer Basin Unit, Van Orden used the Orange Road. Despite the easement, Radford placed a pole fence across the Orange Road where it enters his Outlet Ridge Unit property at the southern border after his purchase. It prevented access to the Orange Road and blocked Van Orden's southern access point.

In May of 2017, Radford noticed a road had been cut into a hillside in a remote location on his recently purchased Homer Basin Unit property. Prior to this, there was only a cow trail; no road existed at that location. Van Orden admitted that he cut the road on the hillside using a bulldozer in July of 2016, again falsely believing he was still leasing the property from the Thompsons. Van Orden's cut resulted from him using his bulldozer to remove vegetation and flatten a path up the hillside in order to move his bulldozer up the hill. Radford hired Patrick Naylor with Rocky Mountain Environmental Associates, Inc., (RMEA) to determine the cost of repairing the property damage caused by Van Orden.

During spring of 2017, Radford desired to build a fence between his property in the Outlet Ridge Unit and IDL property in the Outlet Ridge Unit, which was being leased by Van Orden. The planned fence was to connect to the "Whitehead Fence" and head south, separating the two parcels. The Whitehead Fence is a fence that runs mainly east-to-west and separates the IDL property in the Outlet Ridge Unit from the Homer Basin Unit. Radford reviewed a recorded survey for his property and checked for survey markers; he found certain ones using his non-survey grade global positioning device. In May of 2017, near the inception of construction of the fence, Radford again attempted to find the survey markers between his property and the IDL land – this time he could not find them. Radford hired an individual to build the fence.

4

During construction of the fence, a confusing exchange occurred in which Van Orden approached Radford's fence builder, concealed his identity by introducing himself as someone else, sought information about the fence, and then told the builder he had constructed the fence on IDL property. During the exchange, Van Orden left for a brief period of time and walked around the north end of where the new fence would connect with the Whitehead Fence; coincidentally, this was also where the survey markers had disappeared. The next day, Radford's fence builder found the missing survey marker one-hundred to two-hundred feet north of the Whitehead Fence. It looked as though it had been moved or tampered with recently. Radford suspected Van Orden had moved or tampered with the survey marker, but neither he nor his fence builder saw anything to support this suspicion. A professional surveyor concluded that the survey marker was not in the correct location, which resulted in Radford's newly constructed fence sitting twenty to thirty feet east of the actual property boundary line, on IDL property.

In the summer of 2017, Radford observed Van Orden's cattle traverse from the southern end of the Homer Basin Unit onto his property in the Outlet Ridge Unit through cut fences. Van Orden admitted that he had cut fences between property owned by Radford and the surrounding properties. Van Orden also admitted he cut through a chain on one of Radford's gates and installed his own lock. Van Orden claimed he cut the wires or obstructions that blocked his use of the Orange Road.[2]

In June of 2017, Radford began and completed construction on one half of a partition fence between his property in the Outlet Ridge Unit and Seven J's property in the Outlet Ridge Unit. Radford paid $5,000.00 for his half of the fence. On October 17, 2017, Radford sent Seven J a notice pursuant to Idaho Code section 35-103, informing it that he intended to build the remaining half of the fence to complete the partition fence between his property and Seven J's property. Under Idaho Code section 35-103, if adjoining properties are enclosed by a single fence, one party can construct one half of the partition fence between the properties, and with proper notice, the other party must either construct the other one half of the partition fence within six months, or reimburse the first party for completing the fence. Idaho Code section 35-103 provides:

> When two or more persons own land adjoining which is inclosed [sic] by one (1) fence, and it becomes necessary for the protection of the rights and interests of one (1) party that a partition fence be made between them, the other or others, when

---

[2] After a hearing before the trial court, Van Orden repaired the fences that had been cut and the parties were ordered to keep their respective locks on the gates at issue.

5

notified, must proceed to erect, or cause to be erected, one-half (1/2) of such partition fence; said fence to be erected on, or as near as practicable to, the line of said land. And if, after notice given in writing, either party fails to erect and complete, within six (6) months time thereafter, one-half (1/2) of such fence, the party giving the notice may proceed to erect the entire partition fence and collect by law one-half the costs of such fence from the other party, and he has a lien upon the land thus partitioned.

Radford's notice read in part:

> Radford hereby provides an additional notice to the [IDL's] Lessee of fencing under Idaho Code § 35-103. There is a small strip of land on the south side of the Radford Property that borders between the Radford Property and property owned by Seven J. Ranches, Inc. The Department's letter dated May 3, 2017, informed the Lessee and Seven J. Ranches, Inc., that Radford intended to fence the Radford Property. That provided notice to Lessee and Seven J. Ranches, Inc., that the owner needed to build the fence under the statute along this unpartitioned portion of the Radford Property. There has never been any confusion about this obligation.
>
> But if, in the alternative, a court finds that this earlier notice was sufficient, Radford hereby again provides notice to Mr. Van Orden and to Seven J. Ranches, Inc., that Radford intends to fence along the border between the Radford Property and the property owned by Seven J. Ranches, Inc., located between Sections 14 and Section 23, Township 2S R41 E.B.M. *A separate, more detailed notice will be sent to Seven 7* [sic] *as well.*

(Emphasis added).

Radford sent the notice by certified mail, return receipt requested to the Office of the Attorney General, IDL, Seven J in care of Todd Christiansen, Joey Christiansen, and Seven J's attorney, Gary Cooper. Todd Christiansen and Joey Christiansen were two of the original directors of Seven J. Joey Christiansen was designated as Seven J's registered agent. In June of 2018, after receiving no response or observing any action by Seven J, Radford completed the remaining half of the partition fence between his property and Seven J's property at a cost of $5,505.00.

In May of 2018, Radford observed cattle trickling into the Homer Basin Unit. He also saw cattle being unloaded onto property he leases in the Homer Basin Unit. He estimated he saw about two-hundred and fifty head of cattle. Matt Thompson also saw cattle in the Homer Basin Unit in May, June, July, August, September and October of 2017. His estimate of the number of cattle ranged from one hundred to three hundred head. In November of 2017, Matt Thompson observed roughly one thousand or more head of cattle in the Homer Basin Unit. Radford conceded that the Homer Basin Unit is open range, but he believed that Van Orden placed an excessive number of

cattle on his leases with IDL in the Homer Basin Unit. IDL inspected the Homer Basin Unit bi-weekly during 2017 and did not find any over-grazing issues. However, Van Orden testified to placing salt licks on Radford's property in the Homer Basin Unit in order to draw his cattle away from a water source. Van Orden testified that he thought he had placed the salt licks on IDL property he was leasing, not Radford's.

The record demonstrates continued contention between Radford and Van Orden. Radford claimed that in July of 2018, while he was driving on a twenty-eight foot wide road in Bone, Idaho, he saw a white Kenworth semi-truck pulling a cattle trailer coming toward him. Radford testified he had to drive his vehicle off the road to avoid a collision because the oncoming semi-truck was three to three and one-half feet into Radford's lane. After recovering from the incident, Radford noticed a second truck coming toward him and recognized the driver was Van Orden's son. Radford then assumed the first truck had been driven by Van Orden himself. Radford called the police, but he did not crash his vehicle or sustain any physical, mental, or emotional injuries. Van Orden denied the incident.

In 2018, Radford hoped to run cattle on his Homer Basin Unit and Outlet Ridge Unit properties. However, he was concerned about his fences continually being cut without reason and his cattle mixing with Van Orden's. Radford therefore paid to pasture his cattle at a different location for the summer.

## B. Procedural History

Radford sued Van Orden for trespass, trespass of cattle, tortious removal of survey markers, tortious interference with a contract, quiet title to roadway, damages to fences, assault, tortious interference with economic opportunity, and a request for injunctive relief. Van Orden asserted various counterclaims and defenses including removal of Radford's fence in trespass on IDL property, and sought an injunction against Radford for interference with easement rights and a declaration of easement by prescription over the Orange Road. In a separate lawsuit, Radford sued Seven J and alleged a violation of Idaho Code section 35-103 for failing to pay its one-half share of the fence. Seven J contended that Radford's fencing notice had been insufficient. Seven J also counterclaimed for a declaration of an easement by prescription over the Orange Road. The district court granted a motion to consolidate the two cases.[3]

---

[3] For context as to why these two seemingly unrelated cases were consolidated, Seven J was formerly incorporated and owned by a group of siblings including Shelli Van Orden. Seven J has not reinstated its corporate status since it

Before trial, Radford filed a motion for partial summary judgment regarding his trespass claim against Van Orden for the bulldozer cut into the hillside. In opposition to Radford's motion, Van Orden argued that Radford's trespass cause of action required Radford to own the property at the time the trespass and resulting injury occurred; and because the Thompson family, not Radford, owned the land at the time the cut was made, Radford did not have standing to bring suit. In his motion, Radford argued that Van Orden's cut constituted a continuing trespass, or in the alternative, he had standing to bring suit against Van Orden because Shirlee Thompson executed a written assignment of any claims she possessed against Van Orden to Radford.[4]

The district court agreed with Radford's latter argument and largely relied on Idaho Code section 55-402 and this Court's decision in *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.*, 54 Idaho 765, 37 P.2d 407 (1934). The district court held that Radford's claim against Van Orden involved damage to property, and such causes of action that arise out of an alleged violation of a right of property are assignable. Therefore, Shirlee Thompson's assignment of claims to Radford was valid and gave Radford standing to bring suit against Van Orden. However, the district court still denied Radford's motion for summary judgment because it found that Van Orden's affidavit in response created a material issue of fact regarding liability for the damages to Radford's property. The case proceeded to a bench trial.

At trial, Radford called Patrick Naylor to testify. Naylor, is a partner and vice president of RMEA, which provides environmental site assessments and remediation, among other environmental services. Naylor has provided such remediation plans for thirty years. He is a professional engineer and geologist and has thirty years of experience in assessing environmental sites and providing remediation recommendations and plans. Radford hired RMEA in the summer of 2017 to provide a remediation plan for the property damage caused by Van Orden. Naylor was brought into the project in late spring of 2018. The initial part of Naylor's process was to discuss remediation objectives with the client; in this case, Radford desired the land to be returned to its pre-disturbance and natural condition.

At trial, Naylor estimated that remediation would cost $76,175. On top of that, Naylor added in a 30% contingency, which he described as common practice for any construction project.

---

was administratively dissolved in 1993. Since the 1990s, Van Orden has acted as an agent for Seven J with the knowledge and consent of its partners.

[4] Shirlee Thompson executed a written assignment of claims, which transferred any claims, demands, causes of action, and rights to payment she had against Van Orden to Radford on October 25, 2017.

8

With the contingency, the total of the restoration cost was $99,028. This included a general topographical survey, retention of a vegetation expert to inspect the site and develop a seed mix for subsequent site restoration of the native plants, development of a project design and remediation plan for regrading the hill to its natural slope, implementing erosion and settlement controls to minimize the risk of erosion, and planning for oversight, monitoring, and weed control to make sure the remediation goes as planned and to ensure the natural vegetation is restored and not overrun by weeds. During Naylor's cross-examination, the following exchange occurred:

Q: You indicate that this opinion does not represent a bid.
A: Yes.
Q: What do you mean by that?
A: A bid would require a detailed design in order to have a more precise assessment of cost and activities.
Q: So if one were to develop a reasonably certain amount, that would be a bid?
A: Yes.
Q: And yours is not reasonably certain because it's not a bid, correct?
A: That is correct.

Van Orden then moved to strike the entirety of Naylor's testimony based on his apparent admission that his remediation damages estimate was not "reasonably certain." The district court took the motion under advisement. On re-direct examination, Naylor clarified his testimony:

Q: Mr. Naylor, there was quite a bit of discussion in terms of the level of certainty to which you had to your preliminary cost opinion; and you had indicated a desire to further explain your answer on that point. Would you still like to do so?
A: Yes. It seems that the term used by Mr. Cooper ["reasonably certain"] has some legal connotation which was – since I'm not certain what that means, it's difficult for me to give an accurate answer. If there's a definition of what that means, I don't know.

I wanted to clarify that cost estimates and cost opinions are quite typically done at different scales. So there's – and often they're designated by class from Class 1, which is a very precise cost estimate up to Class 5, which is – it's a little better than arm waiving. This is more like – on the order of what I would call a Class 4 cost estimate.

Estimate meaning that site information was used to develop costs with a physical visit to the site, an assessment of the general issues at hand and with some consultation of contractors to obtain costs.

The following day, the district court denied Van Orden's motion to strike Naylor's testimony and explained:

Yesterday, Mr. Cooper, you made a motion to strike the expert testimony in this case. You are correct, in that the plaintiff in this case has the burden of proving

9

damages within reasonable certainty. The expert used your language, clarified his position as to why he was offering the opinion he was offering and how he reached the cost analysis, and so far as his opinion, I think it's still relevant.

The question is whether his testimony after being considered by the Court as the trier of fact, that testimony and any additional that may come in, whether those damages have been proven to a reasonable degree of certainty. So I'm going to deny the motion to strike his testimony.

Van Orden did not call his own expert witness to testify to the damages, but instead relied on his own testimony. Van Orden testified that he previously caused similar damage by cutting into land with a bulldozer on an IDL parcel. The IDL required Van Orden to remediate the area, which consisted of Van Orden scattering seed, monitoring, and spraying herbicide to control any weeds. Van Orden testified that this remediation only cost $530 and it is the same work that needed to be done to Radford's land. However, Ricky Heath Hancock testified as a resource supervisor for IDL and stated that the seed mix spread by Van Orden to restore the IDL land was not a native species, but a different species the State thought would reestablish well in that area, and the State did not require Van Orden to replace any topsoil or re-grade the area.

After trial, the district court issued its decision, which contained specific and detailed findings of fact that reflected the aforementioned background facts and included its conclusions of law. Regarding trespass and damages for restoration of property, the district court concluded that Van Orden trespassed on the property. The district court noted that Van Orden did not deny that he had entered the property in July of 2016 under the mistaken assumption that he had leased the property from the Thompsons for the 2016 season. Van Orden also admitted that he used a bulldozer to flatten and widen an existing cow trail located on a steep hill on Radford's property in order to more easily move his bulldozer on the trail. Because the district court previously determined that Shirlee Thompson had assigned any claims owned by her against Van Orden to Radford, it concluded that Radford had a right to recover damages for Van Orden's trespass.

The district court also determined that the evidence supporting Radford's allegations of damages was reasonably certain. Restoration of the hillside required replacement of twelve inches of topsoil on two thousand linear feet of trail, and grading. The district court found Naylor to be a credible and qualified witness. The district court found Naylor's evaluation and damage estimate, as presented in his remediation plan, to be logical, well-reasoned, and justified to a reasonable degree of certainty. However, the district court did not add in Naylor's 30% contingency factor to

10

the damages because it found it was too speculative. The district court thus awarded Radford $72,175 for remediation of the damages caused by Van Orden's trespass and bulldozer cut.

In Radford's trespass of cattle cause of action, the district court concluded that while Van Orden has extensive knowledge and experience in the area – as he has leased property from the IDL since 2011 – this experience contradicted Van Orden's testimony that the trespass was a mistake because he thought he was placing salt licks on IDL property. Nevertheless, the court determined that Radford had not adequately proven his damages. Radford tied his damages to his claim that Van Orden over-grazed the Homer Basin Unit area. However, the testimony from IDL was clear and uncontradicted that the Homer Basin Unit had not been over-grazed. Therefore, the district court did not award damages to Radford on this claim.

Finally, regarding Radford's fence claim against Seven J pursuant to Idaho Code section 35-103, the district court ruled in favor of Radford and ordered Seven J to pay $5,000 in reimbursement to Radford. The district court found that the maps admitted into evidence showed an existing fence enclosing the Outlet Ridge Unit, which included most of Seven J's property, all of Radford's Outlet Ridge property, and three parcels of IDL land. Thus, the prerequisite to Idaho Code section 35-103 had been met. Furthermore, the district court found Radford's notice was adequate. Therefore, the district court concluded that Radford was entitled to recoup the cost of building Seven J's one-half of the fence.[5] The district court entered a corresponding judgment and order reflecting its findings of fact and conclusions of law.

Radford then filed a memorandum of costs and attorney fees against Seven J, which Seven J opposed. Radford requested fees only against Seven J pursuant to Idaho Code section 12-120(1) because Radford had prevailed against Seven J and he had pleaded for an award of less than $35,000 ($5,505). Seven J argued that Radford did not entirely prevail because: (1) Radford's motion in limine to declare Seven J a general partnership was denied; (2) the cases were consolidated so the district court should consider Radford's failed claims against Van Orden; and (3) Radford's fee request was unreasonable. The district court dismissed Seven J's first argument because Radford prevailed in his only claim against Seven J and also prevailed in defeating Seven J's counterclaim against him. The district court gave little weight to Radford's motion in limine to declare Seven J a general partnership because it was made during the course of litigation and not

---

[5] The district court only awarded Radford $5,000, his cost to build the first one-half of the partition fence, not $5,505, the amount Radford claimed he paid to build the second one-half of the partition fence.

part of Radford's pleaded claim for relief. The district court refused to consider the claims lost by Radford against Van Orden as part of the prevailing party consideration, reasoning that the parties were separate entities and the cases were consolidated similarly to a multi-party lawsuit.

The district court then turned to Seven J's specific objections regarding the reasonableness of Radford's attorney fees request. The district court examined each of Seven J's twenty specific objections to billings or work performed by Radford's attorneys. The district court rejected each contention except for two, in which the district court reduced the billable hours by one-half for excessive work performed. Next, the district court examined all of the requisite considerations under Idaho Rule of Civil Procedure 54(e) and ultimately awarded Radford attorney fees in the amount of $29,115.25.[6]

Simultaneously with their objections to Radford's request for attorney fees and costs, Van Orden and Seven J filed a motion for reconsideration of the district court's findings of fact and conclusions of law. Among other arguments, Van Orden asserted that the district court's findings of fact and conclusions of law failed to address his counterclaim for an injunction against Radford for interference with his easement rights; specifically, he asked the court to order Radford to remove the pole fence at the southern border of Radford's Outlet Ridge Unit property that blocked the Orange Road. Radford opposed this motion and supported his argument with an interlocutory order from a different case from the Bonneville County District Court, which denied IDL's request to remove the pole fence. The district court in this case did not consider the interlocutory order of another district court because it was an interlocutory order, not a final judgment, and the facts presented to the other district court may not have been the same ones presented during the week-long trial. The district court granted Van Orden's motion to reconsider because it had failed to address Van Orden's counterclaim in its findings of fact and conclusions of law. The district court then granted Van Orden's request for an injunction and required Radford to install a gate where the Orange Road meets the pole fence to provide access.

Both parties appealed. Van Orden and Seven J assert four categories of error: (1) the district court's determination of standing on summary judgment; (2) the award for damages on trespass because the damages were not proved with reasonable certainty; (3) the award for one half of the partition fence against Seven J; and (4) the finding that Radford was the prevailing party and its award of reasonable attorney fees. Radford cross-appealed the district court's denial of damages

---

[6] The district court also awarded Radford costs in the amount of $1,220.72, as a matter of right.

for his trespass of cattle claim against Van Orden and the district court's directive to Radford to install a gate to allow Van Orden to access the Orange Road. Radford also requests attorney fees on appeal against only Seven J.

## II. STANDARD OF REVIEW

" 'Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review.' " *Frantz v. Osborn*, 167 Idaho 176, 179, 468 P.3d 306, 309 (2020) (quoting *In re Jerome Cty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012)).

The applicable standard of review regarding a trial court's factual findings and legal conclusions after a bench trial was explained in *Caldwell Land and Cattle, LLC v. Johnson Thermal Systems, Inc.*:

> Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Borah v. McCandles*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009) (citing *Benninger v. Derifield*, 142 Idaho 486, 488-89, 129 P.3d 1235, 1237-38 (2006)). This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous. *Id.* Clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017) (quoting *Pandrea v. Barrett*, 160 Idaho 165, 171, 369 P.3d 943, 949 (2016)). Substantial and competent evidence exists [i]f there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal. . . . *Id.*

165 Idaho 787, 795, 452 P.3d 809, 817 (2019) (internal quotations omitted). On appeal, we exercise free review of the trial court's conclusions of law. *Fox v. Mountain W. Elec., Inc.*, 137 Idaho 703, 707, 52 P.3d 848, 852 (2002).

This Court reviews a district court's decision on a motion for reconsideration utilizing the same standard of review the lower court used when deciding the motion. *Monitor Fin., L.C. v. Wildlife Ridge Estates, LLC*, 164 Idaho 555, 559-60, 433 P.3d 183, 187-88 (2019). Upon a motion for reconsideration under Idaho Rule of Civil Procedure 52(b), "the court may amend its findings, or make additional findings, and may amend the judgment accordingly." I.R.C.P. 52(b).

## III. ANALYSIS

### A. Radford had standing to sue Van Orden for trespass.

Van Orden contends that Radford did not have standing to sue because Radford was not the legal property owner at the time the trespass and damages occurred, and Shirlee Thompson could not assign the claim to him. Radford counters that the assignment was legitimate under the

law. However, Radford argued in the alternative that the assignment was unnecessary because the damage caused by Van Orden's cut amounts to a continuing trespass upon his land.[7]

Standing, along with other concepts of justiciability, identify suitable and appropriate occasions for adjudication by a court. *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015). "Standing 'focuses directly on the question whether a particular interest or injury is adequate to invoke the protection of judicial decision.' " *Id.* (citation omitted). Standing is a threshold issue to be determined before reaching the merits of the case. *Id.* This Court has adopted the federal justiciability standard. *Id.*; *see also Koch v. Canyon Cnty.*, 145 Idaho 158, 161, 177 P.3d 372, 375 (2008) ("When deciding whether a party has standing, we have looked to decisions of the United States Supreme Court for guidance."). To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'like[lihood]' that the injury 'will be redressed by a favorable decision.' " *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

The district court relied upon Idaho Code section 55-402 and *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co. (Idaho Gold Dredging Corp. II)*, 54 Idaho 765, 37 P.2d 407 (1934), to support its decision. In the *Idaho Gold Dredging Corporation* cases, Idaho Gold Dredging Corporation ("Dredging Corporation") purchased "placer mining ground" on a creek from Gold Dredging & Power Corporation ("Power Corporation") in April 1928. *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co. (Idaho Gold Dredging Corp. I)*, 52 Idaho 766, 766, 22 P.2d 147, 148 (1933). After purchasing the placer mining ground, Dredging Corporation discovered that Boise Payette Lumber Company had used grease and oil as part of its timber operations in that general area until 1926. *Id.* The grease and oil damaged the placer mining grounds, making it uneconomical for Dredging Corporation to extract gold from the creek. *Id.* The previous owner of the land— Power Corporation—assigned its cause of action arising out of the damage to the placer mining ground to Dredging Corporation. *Id.* Dredging Corporation then filed a complaint against Boise Payette Lumber Company to recover damages caused by the grease and oil. *Id.* The Court, in *Idaho Gold Dredging Corp. II*, held that Power Corporation's cause of action for damages that occurred

---

[7] Because we are deciding this issue on the same grounds relied upon by the district court, we will not address the alternate grounds asserted by Radford.

14

prior to April 1928 was assignable to Dredging Corporation under Idaho Code section 54-402.[8] 54 Idaho at 765, 37 P.2d at 409. The Court explained that Idaho Code section 54-402 authorizes the assignment of a cause of action arising out of the violation of a property right:

> [Boise Payette Lumber Company] contends that the cause of action set forth in the third amended complaint is not assignable, and hence that [Dredging Corporation] is not the real party in interest. Section 54-402, I. C. A., is as follows: "A thing in action arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office." The thing in action in this case arises out of an alleged violation of a right of property, and, under the section of the Code above quoted, is assignable.

*Id.* (citing *MacLeod v. Stelle*, 43 Idaho 64, 249 P. 254 (1926)). In other words, Dredging Corporation was the real party in interest.

Like Power Corporation, which had a cause of action stemming from a violation of a property right that occurred prior to the sale of the placer mining grounds to Dredging Corporation, the Thompsons had a cause of action for a violation of a property right that occurred prior to the sale of their land to Radford. Further, like Power Corporation, which assigned its cause of action to Dredging Corporation in accordance with then Idaho Code section 54-402, the Thompsons assigned their cause of action to Radford in accord with the current statute, section 55-402. Finally, like the assignee in *Idaho Gold Dredging Corp. II* that was deemed to be the real party in interest for the purpose of pursuing the cause of action, Radford, as the assignee, is the real party in interest relative to the cause of action here. Consequently, Radford had standing to pursue the Thompsons' cause of action against Van Orden.

We acknowledge that the "violation of a property right" in the *Idaho Gold Dredging Corporation* cases involved a nuisance action—not a trespass action. *See Idaho Gold Dredging Corp. II*, 54 Idaho at 765, 37 P.2d at 409–10; *see also Idaho Gold Dredging Corp. I*, 52 Idaho at 766, 22 P.2d at 151. Nevertheless, nuisance claims and trespass claims both constitute a violation of a property right. "Idaho case law has defined 'trespass' to apply to the wrongful interference with the right of exclusive possession of real property, while the tort of private 'nuisance' applies to the wrongful interference with the use and enjoyment of real property." *Moon v. N. Idaho Farmers Ass'n*, 140 Idaho 536, 541, 96 P.3d 637, 642 (2004) (citing *Mock v. Potlatch Corp.*, 786

---

[8] When the *Idaho Gold Dredging Corp.* cases were decided in 1933 and 1934, Idaho Code section 55-402 was designated as Idaho Code Section "54-402."

15

F.Supp. 1545 (D. Idaho 1992)). Thus, the district court properly relied on *Idaho Gold Dredging Corporation II* to conclude that Radford had standing.

Van Orden argues that the Thompsons did not have a cause of action to assign to Radford because Radford purchased the land from the Thompsons "as-is." He explains his reasoning as follows:

> The purchase price of the property sold to Radford was not affected because of Van Orden's conduct. Radford never sued the Thompsons and based on the terms of the Purchase and Sale Agreement he could not have because he did not provide written notice as required and he purchased the property "as is" after the road had already been cut by Van Orden. The Thompsons never paid anything to Radford to compensate him for the damage to the property that occurred before he purchased it. Thus, if the Thompsons did not suffer any damages because of Van Orden's conduct, there was not a valid claim against Van Orden that could be assigned and then pursued by Radford.

Van Orden's theory misses the mark, however, because an "as-is" provision in a purchase and sale agreement does not negate the Thompsons' cause of action against Van Orden. It is undisputed that Van Orden trespassed on the Thompsons' land in 2016 and damaged the land by creating a cut. Further, the Thompsons could establish damages by showing the cost to restore the cut. *See* Restatement (Second) of Torts § 929(1)(a) (1979) (stating that damages can include the cost of restoration that has been or may be reasonably incurred); *see also Weitz v. Green*, 148 Idaho 851, 866, 230 P.3d 743, 758 (2010) (stating that restoration costs can be an appropriate measure of damages). Moreover, the Thompsons were entitled, at the very least, to nominal damages. *See, e.g.*, *Aztec Ltd., Inc. v. Creekside Inv. Co.*, 100 Idaho 566, 570, 602 P.2d 64, 68 (1979) (citing *Taysom v. Taysom*, 82 Idaho 58, 349 P.2d 556 (1960)) ("[I]n cases of trespass to land, the plaintiff need not prove actual harm in order to recover nominal damages."). Thus, Van Orden's argument fails on its face. The Thompsons did have a viable cause of action against Van Orden that could be assigned to Radford under Idaho Code section 55-402. Consequently, Radford had standing.

Van Orden further argues that Radford never offered the assignment agreement between the Thompsons and Radford as evidence at trial. That argument is also unavailing. The district court expressly considered the assignment agreement when it ruled on Radford's motion for partial summary judgment. After reviewing the assignment agreement, Idaho Code section 55-402, and relevant case law, the district court held that Radford had standing to pursue the cause of action against Van Orden. Accordingly, there was no need for Radford to offer the assignment agreement as evidence at trial; the issue of standing had already been decided.

16

**B. The district court's award of damages for Van Orden's trespass was supported by substantial and competent evidence and was reasonably certain.**

Van Orden's argument regarding the district court's award of damages is two-fold. First, he contends the district court erred below by overruling his objection to strike Naylor's testimony. Second, he contends the district court erred by finding Radford proved trespass damages to a reasonable certainty and awarding him $72,175 in damages. As noted, this Court does not set aside a trial court's findings unless they are clearly erroneous. *Caldwell Land and Cattle*, 165 Idaho at 795, 452 P.3d at 817. If the findings are supported by substantial and competent evidence – such that a reasonable trier of fact could reasonably conclude the same – this Court will not disturb those findings. *Id.*

A district court's decision to admit or exclude the testimony of an expert witness is reviewed for an abuse of discretion. *Clark v. Klein*, 137 Idaho 154, 156, 45 P.3d 810, 812 (2002). When examining discretionary decisions of a trial court, this Court applies a four-prong test to determine whether there was an abuse of discretion and asks whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choice available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Idaho Rule of Evidence 702 governs the admission of expert witness testimony. It provides for the admission of expert testimony "if the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." I.R.E. 702. Yet, even if the testimony is admissible, it still may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." I.R.E. 403. Van Orden has not argued that Naylor's testimony was substantially outweighed by any of the mentioned factors, nor has he argued which of the four *Lunneborg* prongs the district court violated.

Here, it was not an abuse of discretion for the district court to deny Van Orden's motion to strike Naylor's testimony and admit it. Naylor testified to his decades of experience in engineering, geology, and providing remediation plans. This type of unique and specific knowledge assisted the trier of fact with the specific remediation that was needed on Radford's land. Naylor was

tripped-up on cross-examination about his estimate of damages not being "reasonably certain," but a fair review of the record discloses that this was more the result of Naylor's modesty and caution while testifying. Moreover, the term "reasonable certainty" is the standard by which a plaintiff must prove damages at trial; it does not govern whether expert testimony is admissible for consideration by the trier of fact. Admissibility of expert testimony is determined by Rule 702.

The record establishes that Naylor provided a detailed and specific remediation plan and cost estimate that was clearly based on more than mere speculation. Naylor testified extensively about each step of the proposed remediation plan, how it would be accomplished, and its cost. Naylor accounted for the specific seed that needed to be spread, how the slope would have to be re-graded, and how much topsoil needed to be replaced. Naylor even accounted for the minute details of the operation – including the cost of moving the necessary equipment to and from the site. Naylor's report, which went into much further detail than his trial testimony, was *the opposite of speculative*. His report and testimony assisted with a matter outside the common experience and knowledge of a lay trier of fact and it was not an abuse of discretion for the district court to admit Naylor's testimony and report.

Next, Van Orden attacks the *weight* the district court afforded Naylor's testimony and report to find Radford proved his damages with reasonable certainty. " 'A district court's award of damages will be upheld on appeal where there is sufficient evidence supporting the award.' " *Griffith v. Clear Lakes Trout Co., Inc.*, 143 Idaho 733, 740, 152 P.3d 604, 611 (2007) (quoting *Sells v. Robinson*, 141 Idaho 767, 774, 118 P.3d 99, 106 (2005)). Sufficient evidence means the damages are proven with reasonable certainty. *Id.* "Reasonable certainty requires neither absolute assurance nor mathematical exactitude; rather, the evidence need only be sufficient to remove the existence of damages from the realm of speculation." *Id.*

Van Orden would have this Court set aside the district court's findings on Naylor's specific and extensive testimony concerning the cost to repair the property damage, and instead adopt Van Orden's self-serving testimony based on anecdotal evidence of his experience in remediating damage he had previously caused. While Naylor initially indicated that his bid was not "reasonably certain," he clarified on re-direct examination that his bid was a Class 4 estimate, which was more than a speculative estimate. The district court properly considered the entirety of Naylor's testimony rather than one statement. On the other hand, Van Orden's proposed remediation plan was not grounded in the same piece of land or the same damages; rather it concerned an IDL parcel

he claimed he had similarly damaged. However, in remediating his damage to the IDL land, Van Orden did not account for re-grading, topsoil, or other details that Naylor did account for in his professional estimate.

The competent evidence and testimony presented by Naylor at trial support the district court's findings of fact on damages. To the extent that Van Orden's argument is essentially an argument about credibility, the district court found Naylor's testimony and remediation plan more credible than Van Orden's. To that extent, this Court will not second-guess the credibility determinations of the trier of fact and affirms the district court's award of damages for the trespass of lands.

### C. Radford's fence notice to Seven J was sufficient under Idaho Code section 35-103 to require Seven J to reimburse Radford for one-half of the constructed fence.

Seven J challenges the district court's findings on Radford's partition fence claim, arguing: (1) there was no evidence that a single fence enclosed both properties to trigger the application of Idaho Code section 35-103; (2) the district court erred by awarding $1,255 of the $5,000 awarded because that cost amount was incurred by Radford Cattle, LLC, not Radford; and (3) the district court erred by finding Radford's partition fence notice was sufficient to invoke Seven J's duty to construct one half of the fence.

Idaho Code section 35-103 provides:

When two or more persons own land adjoining which is inclosed [sic] by one (1) fence, and it becomes necessary for the protection of the rights and interests of one (1) party that a partition fence be made between them, the other or others, when notified, must proceed to erect, or cause to be erected, one-half (1/2) of such partition fence; said fence to be erected on, or as near as practicable to, the line of said land. And if, after notice given in writing, either party fails to erect and complete, within six (6) months time thereafter, one-half (1/2) of such fence, the party giving the notice may proceed to erect the entire partition fence and collect by law one-half the costs of such fence from the other party, and he has a lien upon the land thus partitioned.

We have expressly held that the plain language of the statute requires that the property must be enclosed by a fence in order to trigger Idaho Code section 35-103. *Porter v. Bassett*, 146 Idaho 399, 406, 195 P.3d 1212, 1219 (2008).

Based on our review of the record, we hold that the substantial and competent evidence presented at trial supported the district court's finding that the properties were enclosed by a fence. Seven J asserts that the district court erred because it relied on Radford's exhibit 47, which does

not show that a fence entirely encloses the Seven J and Radford properties. However, when examining the district court's findings of fact, it clearly cited Plaintiff's Exhibits 11, 50, and 57, for the finding that the properties were enclosed by a fence. These exhibits show a fence that encloses the Outlet Ridge Unit, which contains Seven J's property, Radford's property, and the IDL land.[9] Seven J's contention merely disputes the specific finding of the district court, which was supported by substantial and competent evidence; therefore, we affirm the district court's finding that the properties were enclosed by a single fence.

Next, Seven J faults the district court for awarding the entire $5,000 to Radford when $1,255 of the fencing was paid for by Radford Cattle, LLC. Radford responds that this claimed error was waived because Seven J did not raise it below. Seven J replies that, "[t]he distinction was clearly made in the testimony elicited from Radford;" and alternatively argues that it is an issue of standing, which can be raised at any time. This Court rejects both assertions.

At trial, Radford testified unequivocally that he owns 50 percent of Radford Cattle, LLC, and Intermountain Paper Company owns the other 50 percent. Radford also owns 100 percent of Intermountain Paper Company. Therefore, Radford owns 100 percent of Radford Cattle, LLC, and all expenses flow from him. Seven J otherwise does not support its contention with any authority that an individual who owns 100 percent of a company cannot be reimbursed for a partition fence where the company paid for a portion of it.

Finally, Seven J contends that Radford's initial notice was insufficient because the notice stated that Radford would send a more detailed notice later, but he never did. Therefore, he argues that quasi-estoppel barred Radford from relying on the initial letter. "The doctrine of quasi-estoppel 'prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken.' " *Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006) (quoting *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 144, 75 P.3d 194, 198 (2003)).

> This doctrine applies when: (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the

---

[9] While there appears to be a small gap in the fencing on each exhibit, Radford presented testimony at trial that the gap area is a cliff-like area that is too rocky to construct a fence. The terrain nonetheless acts as a fence or barrier because it prevents cattle from crossing it.

offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Id.*

Radford does not dispute that his fencing notice represented that a separate, more detailed notice would be sent to Seven J, but he never sent one. However, this did not evoke quasi-estoppel because it resulted in no disadvantage to Seven J, it did not induce it to change positions, and it would not be unconscionable to allow Radford to take an allegedly inconsistent position. Indeed, where there was only ever one position asserted – that Radford constructed one-half of a partition fence. It cannot be reasonably argued that there was a subsequent inconsistent position taken. Seven J asserts it was disadvantaged because it was waiting for a more detailed notice in order for the six month time clock to begin to run.[10] But this assumes that the initial notice was somehow insufficient. The initial and only letter sufficiently gave notice to Seven J; indeed, the attorneys for Seven J and Van Orden were included as recipients of the letter. Radford's statement that a more detailed notice would follow does not negate the initial notice. The letter itself was sufficient because it stated Radford's intent to erect a partition fence between the properties and it gave specific details of where the partition fence would be built and how much it would cost. Although Seven J states, "[t]he parties need[ed] to communicate as to where the fences are going to be erected," the notice was clear and gave Seven J the section and township locations of the proposed partition fence. Seven J does not allege that it attempted to clarify with Radford when it did not receive a more detailed notice. Furthermore, by the time Seven J received the notice, Radford had already constructed his one-half of the proposed partition fence, making Radford's position crystal clear. While Radford's statement that a subsequent letter would follow may have been confusing, his letter of October 17, 2017, satisfied the statute and provided adequate notice to Seven J of Radford's fencing plans pursuant to Idaho Code section 35-103. Accordingly, the district court did not err in concluding that Seven J is liable to Radford for one half of the constructed partition fence.

**D. The district court erred in not considering damages for trespass of cattle under Radford's unjust enrichment theory.**

---

[10] Seven J does not clarify what additional details it expected or needed in a subsequent notice, nor does it explain how it could have avoided its responsibility to either build its portion of the fence or to pay Radford for constructing it.

Radford contends in his cross-appeal that the district court misunderstood his claim for relief for trespass of cattle. He claims that he alleged in his second amended complaint that Van Orden was unjustly enriched by exceeding his animal units per month (AUM) allotment in the Homer Basin Unit and by intentionally driving his cattle onto Radford's land in the Homer Basin Unit. However, he asserts that the district court erroneously analyzed the damage elements of his trespass of cattle claim as a claim for trespass damages and concluded he was entitled to no relief.

We begin by examining Radford's second amended complaint. Radford generally labeled his fifth cause of action as "Trespass of Cattle." However, within that cause of action, Radford expressly alleged that Van Orden was unjustly enriched by the trespass of his cattle:

> 74. Defendant, without permission, consent, or license willfully and intentionally cut fences and has entered upon the Radford Land and placed salt licks on the Radford land for the express purpose of grazing his cattle on the Radford Land, which served to *unjustly enrich* Van Orden. Prior to Radford fencing, Van Orden intentionally deposited more cattle on state lease land, Lease No G800084 than allowed, which caused the Van Orden cattle to expand and overgraze onto the Radford Land, constituting a trespass on the Radford land.
> . . . .
> 76. As a direct and proximate result of this trespass, Plaintiff's [sic] have incurred damages and Van Orden gained *unjust* benefits in an amount to be determined at trial.

(Emphasis added). At trial, Radford's presentation of evidence could have reasonably been in furtherance of a trespass damages claim or an unjust enrichment claim. For example, he presented evidence that Van Orden intentionally placed salt licks on his property to drive cattle there, and he also testified as to Van Orden exceeding his allotted AUMs in the Homer Basin Unit.

Radford titled this cause of action in his closing brief as "Trespass to Land and Overgrazing," without mentioning unjust enrichment. Then, Radford set out the law applicable to a trespass action, not an unjust enrichment action. Radford even cited the Idaho Civil Jury Instruction for trespass. *See* ICJI 4.40. Moreover, the case law Radford cited in his closing argument only supported damages in a trespass cause of action—not unjust enrichment. *See Miller v. Miller*, 113 Idaho 415, 745 P.2d 294 (1987); *Legg v. Barinaga*, 92 Idaho 225, 440 P.2d 345 (1968). Yet, Radford returned to unjust enrichment as a basis for relief in the closing paragraphs of his brief:

> Mr. Van Orden has been *unjustly enriched* by overgrazing the Homer Basin and by grazing Plaintiffs' Outlet Ridge property. Mr. Van Orden should compensate Plaintiffs for the additional AUMS – over the amount allotted to him

in his grazing lease – he was *unjustly enriched* by Plaintiffs' property as a result of his unlawful actions. . . . Based on the $40 [AUM] rate, Mr. Van Orden was *unjustly enriched* by $30,200 (755 extra AUMs multiplied by $40).

This Court should award Plaintiffs $30,200 damages against Mr. Van Orden for *unjust enrichment*, having utilized 755 AUMs on private ground to which he was not entitled. . . .

(Emphasis added).

The measure of damages under a theory of unjust enrichment "is not the actual amount of the enrichment, but the amount of enrichment which, as between the two parties it would be unjust for one party to retain." *Beco Constr. Co., Inc. v. Bannock Paving Co., Inc.*, 118 Idaho 463, 466, 797 P.2d 863, 866 (1990). To establish a claim for unjust enrichment, a plaintiff must prove: "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Lincoln Land Co., LLC v. LP Broadband, Inc.*, 163 Idaho 105, 109, 408 P.3d 465, 469 (2017) (quoting *Stevenson v. Windermere Real Estate/Capital Grp., Inc.*, 152 Idaho 824, 827, 275 P.3d 839, 842 (2012)). *See also* ICJI 6.07.2 (Unjust enrichment requires a plaintiff to prove: "(1) [t]he plaintiff provided a benefit to the defendant; (2) [t]he defendant accepted the benefit; and (3) [u]nder the circumstances, it would be unjust for the defendant to retain the benefit without compensating the plaintiff for its value."). Thus, to recover damages for unjust enrichment the complaining party must establish that the equities of the case would otherwise make it unfair for the recipient of the enrichment to receive a benefit without making compensation for the value of that benefit.

This is an admittedly close question; we cannot fault the district court for any confusion as to whether Radford was pursuing an unjust enrichment theory or a trespass damages theory. Radford's pleadings and arguments below were a moving target that were difficult to follow. Nevertheless, Radford asserted the theory of unjust enrichment throughout the litigation: he pleaded it in his complaint, he presented testimony and evidence concerning it at trial, and he asserted it as a basis for relief in his closing arguments. Accordingly, we conclude that it was error for the district court not to address it in its decision. Therefore, this matter will be remanded so that the district court can reconsider the evidence adduced at trial and determine whether Radford is entitled to relief under his unjust enrichment theory. Based on this ruling, we do not need to

address the additional issue raised in Radford's cross-appeal as to whether the district court erred in ruling that Radford had not proven any trespass damages related to his trespass of cattle claim.

### E. The district court did not err by requiring a gate to be installed at the southern end of Van Orden's prescriptive easement.

Radford next contends in his cross appeal that the district court erred when it granted Van Orden's motion for reconsideration in part, by requiring Radford to construct a gate where the Orange Road meets the pole fence at the southern border of his Outlet Ridge Unit property. Radford asserts two points of error in the district court's order, which we will address in turn.

Initially, Radford argues that the district court's findings are not supported by substantial evidence because Van Orden could access his easement without a gate at the southern border. While it may be true that without a gate, Van Orden *could* still access the Orange Road, that is not what the easement provides. Radford conceded at trial that the easement granted Van Orden the right to use the Orange Road where it crosses his properties in both the Homer Basin Unit and the Outlet Ridge Unit. Shirlee Thompson granted the IDL, its successors and assigns, an "easement for the purpose of using and maintaining a road in connection with the control, management, use and administration of State lands." The easement reads in part:

> This easement is specifically limited to *ingress and egress* for the control, management, administration, and use of [State] lands, or resources thereof, for the purpose of, including but not limited to, hauling logs and other forest products, hauling minerals, including sand and gravel, hauling agricultural products, moving livestock to and from [State's] lands, agriculture uses, all commercial uses and leasing including energy production and transportation, for access for recreation, and fire prevention and control.

As the district court noted, if Radford is allowed to keep his pole fence that blocks the southern access of the Orange Road, it interferes with Van Orden's use of the easement. The district court correctly found that the easement across Radford's property in the Outlet Ridge Unit would be useless because the Orange Road would not connect to anything – i.e., the road would be entirely enclosed within Radford's property with no way to enter or exit. Part of the purpose of the Orange Road is to move livestock from lands in the Outlet Ridge Unit, *across* Radford's property, to lands in the Homer Basin Unit. Without access to the Orange Road at the southern end of Radford's property, the easement is useless and its purpose frustrated. Although Radford asserts that Van Orden has not shown he has an easement over the private property owned by certain nonparties located south of Radford where the Orange Road continues, that is not at issue in this

case. The private parties who own that land have not been joined in this case. Therefore, as to the parties named and represented in this case, we conclude that the district court did not err.

Second, Radford alleges that the district court's decision gave Van Orden more rights than the IDL, which is the grantee and holder of the easement, because a different district court determined the IDL does not have a right to a gate to the Orange Road at Radford's southern border. Radford's argument is summarily made and it is not clear which findings or conclusions he challenges. The district court here determined that the other district court's decision finding the State was not entitled to a gate at the southern border across the Orange Road was interlocutory and, thus, was not final. The district court in this case, therefore, did not treat that decision as controlling. Radford does not claim this was error. Without such an assignment, this Court will not review the issue any further.

**F. The district court did not abuse its discretion by determining Radford was the prevailing party in his fencing claim against Seven J and awarding reasonable attorney fees.**

Seven J contends that the district court abused its discretion by determining that Radford was the prevailing party below and awarding Radford all the costs and fees he requested. Additionally, Seven J argues the amount of attorney fees awarded was unreasonable pursuant to the considerations set forth in Idaho Rule of Civil Procedure 54(e).

A district court's determination of prevailing party status is left to the sound discretion of that court and will not be disturbed absent an abuse of discretion. *Jorgensen v. Coppedge*, 148 Idaho 536, 538, 224 P.3d 1125, 1127 (2010). Similarly, " '[a]n award of attorney fees and costs is within the discretion of the trial court and subject to an abuse of discretion standard of review.' " *Nye v. Katsilometes*, 165 Idaho 455, 459, 447 P.3d 903 907 (2019) (quoting *Ballard v. Kerr*, 160 Idaho 674, 716, 378 P.3d 464, 506 (2016)). Again, when this Court reviews a trial court's discretionary decision, we apply a four-prong test to determine whether there was an abuse of discretion: whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choice available to it; and (4) reached its decision by the exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

Regarding the first assertion, even though the prevailing party determination is a discretionary decision by the district court, Seven J has failed to assert under which of the four

*Lunneborg* prongs the district court abused its discretion. Seven J reiterates the argument made below that Radford did not prevail on all claims. Yet Radford prevailed on his sole claim against Seven J and successfully defended against Seven J's sole counterclaim. The district court did not abuse its discretion by finding him the prevailing party. First, the district court perceived the issue of prevailing party as a discretionary decision. It then acted within the bounds of its discretion by applying the applicable legal standards to its decision. It noted that in cases with separate entities, similar to multi-party lawsuits, a plaintiff may recover fees if its only action against one of the parties is successful. The district court considered Radford's relief sought - $5,505 for one half of the partition fence – compared to the relief granted - $5,000. Radford succeeded in his only claim against Seven J, while also successfully defending against Seven J's counterclaim for a prescriptive easement across Radford's property. The district court reached its decision through the exercise of reason.

Seven J argued that because Radford did not prevail on a motion in limine, this demonstrates that he did not prevail. However, the district court concluded that Radford's motion was not determinative in its prevailing party analysis because it was an interlocutory motion made during the course of litigation, it was not pleaded as part of Radford's claim for relief, and it did not prevent Radford from ultimately prevailing on his claim against Seven J. Therefore, the district court did not abuse its discretion in its prevailing party determination because it perceived the decision as a discretionary one, it acted within its discretion, it noted the applicable legal principles, and it reached its decision through thoughtful reasoning.

Next, Seven J makes many of the same arguments that it made below regarding specific billing entries, some for as little as 0.3 billable hours, and the billing methods of Radford's attorneys. Essentially, Seven J requests this Court to conduct a de novo factual review of the billings similar to that performed by the district court. The district court's thoughtful and detailed analysis addressed each and every one of Seven J's specific complaints and showed no abuse of discretion. In fact, when warranted, the district court made reasonable adjustments to the billable hours.

In its final argument challenging the attorney fees awarded below, Seven J claims the district court erred in its consideration of each of the factors enumerated by Idaho Rule of Civil Procedure 54(e)(3). Seven J fails to assert under which of the four *Lunneborg* prongs the district court abused its discretion. Again, Seven J essentially asks this Court to perform a de novo review

of the work performed on this case by Radford's attorneys and issue findings reversing the district court. We decline to do so. The district court's findings and analysis of each factor were well-supported and not an abuse of discretion. The time and skill required for adequate representation was due to Seven J's contentions on Radford's fencing notice and their counterclaim for a prescriptive easement. The obvious ill will between the parties only increased the difficulty and the expense of the litigation. Radford's attorneys charged reasonable hourly rates, even if Seven J's attorneys charged a lesser rate. Finally, although the attorney fees were higher than Radford's recovery, it is not uncommon for legal fees to surpass the amount of recovery, especially when an important property right has been vindicated.

In sum, the district court perceived the reasonableness of the attorney fee award as one of discretion, it acted within the boundaries of its discretion, and it applied the correct legal authorities. It reached its decision through the exercise of reason, and addressed each and every one of Seven J's objections in a thirty-seven page order. In reviewing those objections, the district court properly made reductions where necessary. Seven J has failed to demonstrate how the district court abused its discretion in any way and this Court affirms the district court's prevailing party determination and award of reasonable attorney fees.

### G. Radford, as the prevailing party on appeal in his claims against Seven J, is entitled to recover attorney fees and costs associated with the fence claim.

Radford requests attorney fees on appeal against only Seven J pursuant to Idaho Appellate Rule 41 and Idaho Code section 12-120(1). Section 12-120(1) provides that "in any action where the amount pleaded is thirty-five thousand dollars ($35,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees."  The statute further requires a written demand for payment at least ten days before the action is filed. *Id*. Seven J concedes in its briefing that if Radford prevails on appeal regarding the partition fencing issue against Seven J, Radford should be awarded attorney fees under Idaho Code section 12-120(1). Accordingly, because Radford prevailed against Seven J on appeal, we award Radford reasonable attorney fees on appeal, but only for time devoted to the fence claim against Seven J. Additionally, as the prevailing party on Seven J's appeal, Radford is also entitled to costs as a matter of course against Seven J pursuant to Idaho Appellate Rule 40(a).

## IV. CONCLUSION

Concerning Radford and Seven J's appeal, we affirm the district court's rulings that: (1) Radford has standing; (2) Naylor's testimony and report were admissible and Radford proved the trespass damages with reasonable certainty; (3) Radford's partition fence notice to Seven J was sufficient and required Seven J to reimburse Radford for the fence; (4) Radford was the prevailing party against Seven J and was entitled to costs and reasonable attorney fees against Seven J below. Radford, as the prevailing party on appeal in his claims against Seven J, is entitled to recover attorney fees and costs from Seven J associated with the fence claim.

As to Radford's cross-appeal, we affirm the district court's ruling that Radford was required to remove his fence across the prescriptive easement or install a gate for Van Orden's ingress and egress. However, we reverse the district court's decision denying Radford damages for trespass of cattle against Van Orden, and remand with instructions to consider whether Van Orden is entitled to relief under his unjust enrichment theory. Given the mixed result on the appeal and the cross-appeal, costs on appeal are not awarded to either Radford or Van Orden.

Chief Justice BEVAN, and Justices BURDICK, BRODY and STEGNER **CONCUR.**